648 So.2d 1187 (1994)
Katie D. TUCKER, Petitioner,
v.
Donald George RESHA, Respondent.
No. 80991.
Supreme Court of Florida.
November 10, 1994.
Rehearing Denied January 30, 1995.
Brian S. Duffy of McConnaughhay, Roland, Maida, Cherr & McCranie, P.A., Tallahassee, for petitioner.
Richard E. Johnson of Spriggs & Johnson and William A. Friedlander, Tallahassee, for respondent.
Robert A. Butterworth, Atty. Gen., Tallahassee, amicus curiae for the Dept. of Ins., Div. of Risk Management.
Barbara C. Fromm, Leonard J. Dietzen, III and Jennifer Parker LaVia of Parker, Skelding, Labasky & Corry, Tallahassee, amicus curiae for Florida Sheriffs' Self-Insurance Fund.
James K. Green of James K. Green, P.A., West Palm Beach, amicus curiae for American Civil Liberties Union Foundation of Florida, Inc.
HARDING, Justice.
We have for review Tucker v. Resha, 610 So.2d 460 (Fla. 1st DCA 1992), wherein the district court certified the following question of great public importance:
IS A PUBLIC OFFICIAL ASSERTING QUALIFIED IMMUNITY AS A DEFENSE TO A FEDERAL CIVIL RIGHTS CLAIM ENTITLED IN THE FLORIDA COURTS TO THE SAME STANDARD OF REVIEW OF DENIAL OF HER MOTION FOR SUMMARY JUDGMENT AS IS AVAILABLE IN THE FEDERAL COURTS?
Id. at 467. We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution, and answer the certified question in the affirmative.
Katie Tucker was the executive director of the Florida Department of Revenue. Donald Resha owned and operated various book stores and video stores in Leon County, Florida. Resha was also involved with organized labor and organized law enforcement, including several campaigns for the presidency of the Florida AFL-CIO against Daniel Miller, Tucker's husband. Resha filed a multi-count complaint against Tucker, alleging that Tucker ordered an audit and investigation of him without any basis and that she spread rumors that he was involved in a number of illegal activities.
Four of the counts survived Tucker's motions for judgment on the pleadings and summary judgment. The two counts at issue in this case involve claims of deprivation of Resha's civil rights based on 42 U.S.C. § 1983. Resha claims that Tucker violated his first amendment right to join and participate in a labor union and that Tucker participated in a civil rights cover-up to deprive *1188 Resha of his right to obtain redress through the courts. The other two counts, defamation and invasion of the right to privacy, are based upon Florida law.
In her first motion for summary judgment, Tucker asserted qualified immunity as to the federal claims based upon the qualified immunity granted to officials of state government acting in their discretionary capacities. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The court denied the motion for summary judgment on some of the counts, including the two federal counts. Tucker filed a second motion for summary judgment on the remaining counts, again asserting qualified immunity as to the federal counts. Summary judgment was denied on the Friday before trial was set to begin. In response to Tucker's petition for an emergency writ of prohibition and petition for a writ of certiorari, the First District Court of Appeal ordered a stay of trial on the two federal counts.[1]
In her petition for a writ of certiorari from the district court, Tucker sought review of the trial court's order denying summary judgment on the federal counts. Her petition relied in large measure on the established federal appellate mechanism for interlocutory review of orders denying summary judgment on the issue of qualified immunity.[2] The district court determined that there is no analogous Florida appellate procedural rule which would permit Tucker to appeal the non-final order denying summary judgment. Tucker, 610 So.2d at 462-63. Instead, the district court evaluated Tucker's petition for the two prerequisites for review by certiorari: 1) whether a full and adequate remedy is available by appeal after final judgment; and 2) whether the trial court's order departed from the essential requirements of law so that it would cause material injury to Tucker throughout the trial court proceedings. Id. at 464-67. While the district court recognized that Tucker's claim of qualified immunity from suit involves a type of protection that cannot be adequately restored once lost by exposure to trial, id. at 464, the court determined that the order did not depart from the essential requirements of law because genuine factual issues exist as to both counts. Id. at 464-67. Thus, the court denied the petition for writ of certiorari. Id. at 467. The district court also denied Tucker's motion for rehearing, but certified the question of whether the federal standard of review is applicable in the Florida courts. Id.
While this is a question of first impression before this Court, a number of other jurisdictions have addressed this issue. However, the decisions reached by those courts have been less than uniform. Some states have adopted the federal "collateral order doctrine"[3] and permitted immediate review of orders denying motions for summary judgment based upon qualified immunity. See, *1189 e.g., Carrillo v. Rostro, 114 N.M. 607, 845 P.2d 130 (1992). Other states have denied review because their state appellate rules exclude such non-final orders from interlocutory review. See, e.g., Klindtworth v. Burkett, 477 N.W.2d 176 (N.D. 1991). Still other states have granted relief through different vehicles. See, e.g., McLin v. Trimble, 795 P.2d 1035 (Okla. 1990) (issued writ of prohibition to judge to prohibit proceeding with section 1983 action); Henke v. Superior Court, 161 Ariz. 96, 775 P.2d 1160 (Ct.App. 1989) (accepted jurisdiction on special-action petition and ordered trial court to dismiss section 1983 claim).
Florida Rule of Appellate Procedure 9.030(b)(1)(B) provides that the district courts of appeal have appellate jurisdiction over "non-final orders of circuit courts as prescribed by rule 9.130." An order denying summary judgment is not among those non-final orders reviewable pursuant to Florida Rule of Appellate Procedure 9.130.[4] Thus, we agree with the district court's conclusion that Florida's appellate rules do not provide for interlocutory review of such orders. Tucker, 610 So.2d at 463. However, our analysis of this issue does not end with a discussion of Florida's appellate rules. We must also examine the nature of the rights involved.
The United States Supreme Court has consistently recognized that government officials are entitled to some form of immunity from suits for civil damages. See Nixon v. Fitzgerald, 457 U.S. 731, 744-48, 102 S.Ct. 2690, 2698-700, 73 L.Ed.2d 349 (1982), for a discussion of the development of the immunity doctrine. For officials whose special functions or constitutional status requires complete protection from suit, the courts have recognized "absolute immunity." See Nixon (finding president entitled to absolute immunity from damages liability predicated on official acts); Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (recognizing absolute immunity of judges in their judicial functions); Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (same as to legislators). In most instances, however, public officials are only entitled to qualified immunity from suit. See Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The fact that qualified, rather than absolute, immunity is the norm reflects "an attempt to balance competing values: not only the importance of a damages remedy to protect the rights of citizens, but also `the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.'" Harlow, 457 U.S. at 807, 102 S.Ct. at 2732 (citations omitted) (quoting Butz v. Economou, 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978)).
Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. "The central purpose of affording public officials qualified immunity from suit is to protect them `from undue interference with their duties and from potentially disabling threats of liability.'" Elder v. Holloway, ___ U.S. ___, ___, 114 S.Ct. 1019, 1022, 127 L.Ed.2d 344 (1994) (quoting Harlow, 457 U.S. at 806, 102 S.Ct. at 2732).
Consistent with this purpose, the qualified immunity of public officials involves "immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). The entitlement "is effectively lost if a case is erroneously permitted to go to trial." Id. Furthermore, an order denying qualified immunity "is effectively unreviewable on appeal from a final judgment," id. at 527, 105 S.Ct. at 2816, as the public official cannot be "re-immunized" if erroneously required to stand trial or face the other burdens of litigation.
We also note that the defendant official is not the only party who suffers "consequences" *1190 from erroneously lost immunity. As the Supreme Court explained in Harlow, society as a whole also pays the "social costs" of "the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. Finally, there is the danger that fear of being sued will `dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.'" 457 U.S. at 814, 102 S.Ct. at 2736 (quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir.1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950)). Thus, if orders denying summary judgment based upon claims of qualified immunity are not subject to interlocutory review, the qualified immunity of public officials is illusory and the very policy that animates the decision to afford such immunity is thwarted.
For the reasons discussed above, we find the standard announced by the Supreme Court in Mitchell to be the proper one for reviewing such orders. Thus, we answer the certified question in the affirmative and hold that an order denying summary judgment based upon a claim of qualified immunity is subject to interlocutory review to the extent that the order turns on an issue of law. Because this holding will require a change in the Florida Rules of Appellate Procedure, we request the Florida Bar Appellate Court Rules Committee to submit a proposed amendment that will address the rule change mandated by this decision.
Accordingly, we answer the certified question in the affirmative, quash the decision below, and remand for proceedings consistent with this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW and KOGAN, JJ., concur.
McDONALD, Senior Justice, dissents.
NOTES
[1] The trial proceeded as scheduled on the two remaining Florida counts. The jury returned a verdict for Resha on both counts and awarded $396,000 in compensatory and punitive damages. However, on appeal, the First District Court of Appeal reversed the judgment for Resha on both counts. Tucker v. Resha, 634 So.2d 756 (Fla. 1st DCA 1994). The district court concluded that the trial court erred in failing to apply absolute privilege as a matter of law to Tucker's statements regarding Resha as these statements were made within the scope of Tucker's official duties. Id. at 758. The district court also held that the trial court erred in allowing the action for "governmental intrusion" into private life to go to the jury as Florida's constitutional privacy provision does not give rise to an action for money damages. Id. at 759. The district court certified a question of great public importance regarding the governmental intrusion action. Id.
[2] Section 1983 does not specifically address the right of interlocutory review of such non-final orders. However, 28 U.S.C. § 1291 confers jurisdiction on the courts of appeals for "appeals of all final decisions of the district courts of the United States." Federal courts have held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable `final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).
[3] A decision of a district court is appealable if it falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949).
[4] Florida Rule of Appellate Procedure 9.130(a)(3) enumerates the non-final orders of lower tribunals that are subject to review. Orders denying motions for summary judgment are not included in this list of reviewable non-final orders.