693 So.2d 586 (1997)
Commissioner Willie J. JUNIOR, individually, Appellant,
v.
China Pearl REED and Donald Reed, individually, jointly and severally, Appellees.
No. 96-2736.
District Court of Appeal of Florida, First District.
February 20, 1997.
Rehearing Denied June 2, 1997.
*587 James M. Messer and David G. Tucker, Escambia County Attorney's Office, Pensacola, for Appellant.
Lisa S. Minshew, Pensacola, for Appellees.
PADOVANO, Judge.
Willie J. Junior, the chairman of the Escambia County Board of County Commissioners, appeals an order denying his claims of absolute immunity and qualified immunity in a civil rights action brought by Donald and China Pearl Reed under 42 U.S.C. § 1983. We conclude that Commissioner Junior is not protected by absolute immunity because his conduct does not fall within the legislative functions of a local government official. The trial court should have sustained Commissioner Junior's claim of qualified immunity, however, because the conduct forming the basis of the complaint by the Reeds does not amount to a violation of a clearly established right under federal law. For this reason, we reverse.

*588 I.
Escambia County initially sued the Reeds in county court to recover the cost of maintenance work done by county employees on the Reeds' cemetery property in Pensacola. The complaint seeks damages of $1,988.15, for the cost of county personnel and equipment to remove weeds from the cemetery. The Reeds answered, counterclaimed against the County, and filed a third party complaint against Commissioner Junior in his individual capacity. Because the counterclaim and third party complaint were based on claims exceeding the jurisdiction of the county court, the case was transferred to the circuit court. Count I of the third party complaint against Commissioner Junior asserts a claim for damages under 42 U.S.C. § 1983 for a violation of the Reeds' right to procedural due process, and Count II alleges a claim against the Commissioner under the same statute for a violation of the Reeds' right to substantive due process.
The Reeds alleged in the third party complaint that they own a funeral home and part of a cemetery in Escambia County, and that Commissioner Junior also owns a funeral home in Escambia County. On November 8, 1994, the Reeds received a notice from the County informing them of alleged code violations at their cemetery. The Reeds inquired about the notice and were informed by county agents that they had until December 31, 1994, to correct the violations. On December 22, Donald Reed arrived at the cemetery to begin the necessary work and discovered that a county work crew had already cleaned his portion of the cemetery.
The third party complaint goes on to allege that the County's clean-up efforts had begun on December 20, 1994, at the direction of Commissioner Junior before any notification to the Florida Department of Banking and Finance (the state agency regulating cemeteries), and before approval by the Board of County Commissioners. The County Commission did not approve the work at the cemetery until December 22, when Commissioner Junior recommended it as one of his "add items." The Reeds were never notified that this work was to be done.
On January 26, 1995, on Commissioner Junior's motion, the Board voted to authorize the county attorney to initiate an action to recover the cost of the maintenance work. At that meeting, the county attorney advised the Board of the proper procedures the County should follow before entering onto privately owned cemetery property to provide maintenance. Then, approximately one month after the fact, Commissioner Junior mailed the first notice of the County's intention to clean the cemetery to the Florida Department of Banking and Finance.
Based on these facts, the Reeds alleged that Commissioner Junior acted under color of law to deprive them of their civil rights in violation of 42 U.S.C. § 1983. Specifically, the complaint alleges that Junior's actions defamed the Reeds' business and caused a loss of business goodwill, without procedural due process, thereby slandering the Reeds' business reputation and causing damages. The complaint also alleges that Commissioner Junior deprived the Reeds of a constitutionally protected liberty interest by defaming their business and causing a loss of business goodwill in violation of the Reeds' substantive due process rights.
After the action was transferred to circuit court, both Escambia County and Commissioner Junior filed motions to dismiss. Among other matters, the motion filed by Commissioner Junior asserted the defenses of absolute immunity and qualified immunity. On July 11, 1996, the trial court denied the motion to dismiss, ruling that "[i]f the allegations made in Defendants' Counterclaim and Third Party Complaint are taken as true, Defendants have stated a cause of action against Escambia County and Commissioner Junior and no defense of immunity can be well taken as to either of said parties." Commissioner Junior appealed the denial of his motion, contending that he is immune from the action asserted in the Reeds' third party complaint.

II.
We have jurisdiction to review the order denying the motion to dismiss in this case by an interlocutory appeal because the order is one that rejects a defense of qualified *589 immunity as a matter of law. Tucker v. Resha, 648 So.2d 1187 (Fla.1994). Although the present appeal is from an order denying a motion to dismiss and not an order denying summary judgment as in Tucker, the difference in the type of the order does not affect our jurisdiction. The right of review identified in Tucker is based on the nature of the decision in the trial court, not the form of the order in which the decision was made.[1] The federal procedures underlying the rule in Tucker provide for an interlocutory review of an order denying a motion to dismiss as well as an order denying a motion for summary judgment. Behrens v. Pelletier, ___ U.S. ___, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). The critical question is whether the order rejects a defense of qualified immunity as a matter of law. In this case it does.

III.
A person deprived of a federal right by a state or local official acting under color of state law may seek redress under 42 U.S.C. § 1983. The action may be filed in federal court or in a state court under its concurrent jurisdiction, Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), but the right to sue is subject to well defined limitations. The Supreme Court has consistently held that government officials are entitled to some form of immunity from suits for damages. As the Court explained in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), "public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." 457 U.S. at 806, 102 S.Ct. at 2732. The decisions of the Supreme Court recognize immunity claims of two kinds, absolute immunity and qualified immunity.
Absolute immunity is often used to protect members of the judiciary, Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and executive officers such as prosecutors, Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), but it also applies to government officials performing legislative functions. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); Doe v. McMillan, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973). The protection afforded by absolute immunity is available to local governmental officials as well as to those officials performing legislative functions at the federal and state levels. Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673, (1980); Hernandez v. City of Lafayette, 643 F.2d 1188 (5th Cir.1981). As an elected official of the Escambia County government, Commissioner Junior is within the class of governmental officials potentially entitled to claim absolute immunity.
Whether a public official has absolute immunity from suit under section 1983 depends on the relationship between the duties of the official and the conduct that is the subject of the complaint. As the Supreme Court explained in Harlow v. Fitzgerald, the courts must apply a functional analysis to claims of absolute immunity. It is the governmental function that is protected by the immunity afforded to the public official. Under this approach, an officer of the legislative branch of the government has absolute immunity only for legislative functions. A county commissioner could assert a valid claim of absolute immunity for the act of voting on a proposed county budget, for example, because that is a legislative function. In contrast, a county commissioner has no claim of absolute immunity for comments made to the press following a commission meeting because that is an administrative function. See, e.g., Cole v. Gray, 638 F.2d 804 (5th Cir.1981). The burden of establishing a claim of absolute immunity is on the public official claiming the immunity. Butz *590 v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982).
Commissioner Junior contends that he has absolute immunity because the statements he made in connection with the clean-up of the Reeds' cemetery were privileged. This argument is without merit. At most, the privilege would be a defense in a common law action for defamation under state law. Even if such a privilege exists, it would not necessarily support a claim of absolute immunity in a federal civil rights suit. A cause of action under section 1983 and the applicable defenses are defined according to federal law. The application of Florida law in section 1983 actions in state courts is limited to state jurisdictional issues and neutral procedural rules that may be applied to federal actions. Howlett v. Rose, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). Applying the federal standard adopted in Harlow v. Fitzgerald to the facts alleged here, we conclude that Commissioner Junior does not enjoy absolute immunity from suit under section 1983. Commissioner Junior's unilateral act of dispatching a county maintenance crew to clean up the Reeds' cemetery before that action was approved by the county commission was not a legislative function, and he is not therefore protected by absolute immunity.

IV.
Acts or omissions by a government official that are not protected by absolute immunity may be protected by qualified immunity under the circumstances of a given case. Whether a government official has a valid claim of qualified immunity is determined by an objective standard. In Harlow v. Fitzgerald, the Supreme Court decided that government officials are entitled to qualified immunity from suit when performing discretionary functions if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. This standard is designed to enable the trial courts to resolve a qualified immunity issue as a matter of law without the need to consider subjective elements such as intent or bad faith. The protection afforded by qualified immunity is the norm, Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and it is intended to shield government officials from suit in all but exceptional cases. Lassiter v. Alabama A & M University, 28 F.3d 1146 (11th Cir.1994).
Like absolute immunity, qualified immunity is a complete protection from the suit itself and not merely a defense to liability. Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Consequently, the issue of qualified immunity should be resolved at an early stage of the proceedings in the trial court. Often the issue is presented to the court before the parties are allowed to conduct discovery on the merits of the claim asserted in the complaint. See, e.g., Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
The trial court must evaluate the defense of qualified immunity by a two-step process. First, the government official must show that the acts in question were a discretionary governmental function. The burden then shifts to the claimant to show that the conduct of the official violated clearly established statutory or constitutional rights. Zeigler v. Jackson, 716 F.2d 847 (11th Cir. 1983). If the public official's conduct does not rise to the level of a violation of a clearly established statutory or constitutional right, the official is immune from suit, and the litigation can proceed no further.
By these standards, we conclude that Commissioner Junior had a valid defense of qualified immunity. His conduct in connection with the clean-up of the Reeds' cemetery was within the discretionary functions of a county commissioner. Because the Reeds cannot establish that the alleged defamation or interference with their business is a violation of a clearly established statutory or constitutional right, their claim must fail.
Discretionary authority includes an official's actions taken pursuant to the performance of his duties and within the scope of his authority. Jordan v. Doe, 38 F.3d *591 1559 (11th Cir.1994). In the present case, all of the conduct described in the third party complaint falls within Commissioner Junior's discretionary authority. His actions were undertaken during the performance of his duties as Chairman of the Board of County Commissioners, according to a motion at a properly constituted session of the board, and unanimously authorized by the other commissioners. The Reeds argue that Commissioner Junior violated local ordinances and acted contrary to the advice of the county attorney. Whether a given action falls within the definition of a discretionary function, however, depends more on the context in which it was taken than its correctness. Under the circumstances alleged in the complaint, all of the actions and statements of Commissioner Junior were within his discretionary functions.
As for the second part of the test, the Reeds failed to show that Commissioner Junior violated a clearly established statutory or constitutional right. To qualify as a "clearly established" right as that phrase is used in Harlow v. Fitzgerald, the right allegedly violated must have been earlier developed in case law in such a concrete and factually defined context as to make it obvious to all reasonable government actors that what the defendant was doing violates federal law. See City of Hialeah v. Fernandez, 661 So.2d 335 (Fla. 3rd DCA 1995). As the court explained in DeWald v. Wyner, 674 So.2d 836, 840 (Fla. 4th DCA 1996) "[i]f applicable law is unsettled, immunity necessarily results." In this case the Reeds contend that Commissioner Junior's actions and defamatory statements resulted in a loss of their business reputation and goodwill. This conduct does not rise to the level of a constitutional violation, much less a clear violation of a settled constitutional right.
Defamation can amount to a constitutional violation and thus overcome a defense of qualified immunity only if it is accompanied by another kind of injury. Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). This rule, sometimes called the "stigma-plus" test, requires the plaintiff to show that the conduct of the government official directly caused a specific injury to a protected right, such as the right to continued employment. It is not enough merely to claim that the defamation resulted in a loss of reputation or a loss of business.
The Eleventh Circuit Court of Appeals has held that defamation occurring "other than in the course of dismissal from a job, or in the termination or significant alteration of some other legal right or status" is not sufficient to support a claim under section 1983. Von Stein v. Brescher, 904 F.2d 572 (11th Cir. 1990). In Von Stein, the court distinguished Marrero v. City of Hialeah, 625 F.2d 499 (5th Cir.1980), an earlier 5th Circuit decision upon which the Reeds rely. The alleged defamation by the government official in Marrero resulted in a loss of the plaintiff's right to earn a living. Other federal courts have rejected Marrero entirely, holding instead that defamation-based injury is actionable under section 1983 only if the economic damage was caused directly by the act of the government officer. Sullivan v. New Jersey Div. Of Gaming Enforcement, 602 F.Supp. 1216 (D.N.J.1985), aff'd. 853 F.2d 921 (3d Cir.1988); WMX Technologies, Inc. v. Miller, 80 F.3d 1315 (9th Cir.1996). According to this line of cases, the additional injury required by the "stigma plus" test is not established merely by showing that the defamation ultimately resulted in an economic loss. The focus of the inquiry must be on the loss of a protected right, not on the eventual loss of income as a consequence of the defamation. Like the plaintiff in Von Stein, the Reeds merely claim a loss of reputation and goodwill. At best, they established a temporary, partial loss of income that does not invoke the protection of the United States Constitution.
The Reeds alleged that Commissioner Junior violated a state statute regulating cemeteries, but this, too, is insufficient to establish the kind of violation to which the Supreme Court was referring in Harlow v. Fitzgerald. When the Court used the phrase "clearly established statutory or constitutional rights" in Harlow, it was speaking of rights under federal statutes and the federal constitution. 457 U.S. at 818, 102 S.Ct. at 2738. This point was clarified by the Court's holding in Davis v. Scherer, 468 U.S. 183, 104 *592 S.Ct. 3012, 82 L.Ed.2d 139 (1984), that a violation of state law or a state administrative regulation does not strip a public official of qualified immunity. The fact that a defendant's conduct violated state law, even a clearly established state law, does not remove the immunity. Robison v. Via, 821 F.2d 913 (2d Cir.1987); Deane v. Dunbar, 777 F.2d 871 (2d Cir.1985).
We recognize that it may be difficult in some cases to resolve a qualified immunity issue in the context of an appeal from an order denying a motion to dismiss. The adjudication of defenses by motion does not always fit neatly within the framework provided by the rules of civil procedure. We are told that qualified immunity is an affirmative defense and that the burden of asserting the defense rests on the governmental official. Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). This principle is not entirely consistent, however, with the statement in Mitchell v. Forsyth that "[u]nless the plaintiff's allegations state a claim for violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." 472 U.S. at 526, 105 S.Ct. at 2815. (Emphasis added.) We can only reconcile these conflicting principles by holding that it would be proper to consider the defense of qualified immunity in a motion to dismiss if the facts supporting the defense are clear from the complaint. Rule 1.110(d) of the Florida Rules of Civil Procedure provides that "[a]ffirmative defenses appearing on the face of a prior pleading may be asserted as grounds for a motion or defense."
These concerns have not prevented the federal courts from resolving qualified immunity claims by motion to dismiss. In Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), the Supreme Court considered a qualified immunity claim which had been asserted in a motion to dismiss. The Court upheld the defense, reasoning that the allegations of the complaint, even if true, did not establish a clear violation of a statutory or constitutional right. In so ruling, the Court explained:
A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits. One of the purposes of the immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.
500 U.S. at 232, 111 S.Ct. at 1793. The Court observed that the case presented an example of the desirability of resolving immunity claims by motion to dismiss because the plaintiff failed not only to allege the violation of a constitutional right that was clearly established at the time of the defendant's actions, but also to establish the violation of any constitutional right at all. Here, as in Seigert, the Reeds' failure to allege a clear violation of a statutory or constitutional right compels a conclusion that Commissioner Junior had a valid defense of immunity and the trial court should have granted his motion to dismiss.
We also recognize that the resolution of a qualified immunity issue on appeal from an order denying a motion to dismiss can raise difficult questions concerning the proper remedy in the appellate court. If the trial court's decision is reversed, the appellate court must decide whether the plaintiff should be allowed to amend the complaint on remand. Denial of the right to amend could amount to a summary adjudication of the merits of the defense based on nothing more than an insufficient allegation in the complaint. On the other hand, a decision to allow an amendment on remand could result in multiple interlocutory appeals, one for each version of the complaint. Neither result is attractive. In most cases, however, the proper remedy on appeal will be to reverse the order with instructions to dismiss. If the plaintiff could prove any set of facts that would avoid the defense of immunity, *593 then it is likely the trial court was correct in denying the public official's motion to dismiss the complaint. See, e.g., McMath v. City of Gary Indiana, 976 F.2d 1026 (7th Cir.1992). If not, the only possible remedy is to reverse the order with instructions to dismiss the complaint. See, e.g., Molinelli v. Tucker, 901 F.2d 13 (2d Cir.1990).
In the present case, Commissioner Junior's qualified immunity defense could not be overcome by an amendment to the complaint. The essence of the claim by the Reeds is that Commissioner Junior's actions and defamatory statements damaged their reputation and caused an economic loss to their business. If this action on the part of the defendant is not a violation of a settled statutory or constitutional right, and it is not for the reasons we have given, no amount of effort in amending the complaint will make it so. In sum, it is proper to resolve the defense on the basis of the facts alleged in the complaint because the availability of the defense is based entirely on an issue of law.

V.
We hold that Commissioner Junior is immune from the action in this case because he acted within the discretionary functions of his office and because the Reeds failed to establish a clear violation of a statutory or constitutional right. Although the immunity claim was presented in a motion to dismiss it is, nonetheless, a defense that can be adjudicated as a matter of law. The order is reversed and the case is remanded with directions to enter an order dismissing the federal claim under 42 U.S.C. § 1983. Although the federal claim is resolved here on the merits, the trial court is free, on remand, to consider any state claims that may be asserted in an amended pleading.
Reversed.
BOOTH and VAN NORTWICK, JJ., concur.
NOTES
[1] In Tucker, the supreme court directed the appellate rules committee to propose a rule incorporating its decision to allow immediate review of immunity issues. Rule 9.130(a)(3)(C)(viii), which was proposed and ultimately adopted as a result of the decision in Tucker, authorizes an appeal from an order denying qualified immunity as a matter of law, without making a distinction as to the type of order appealed. The rule does not apply to this case because it became effective January 1, 1997, after the filing of the notice of appeal. We note the adoption of the rule here because it is further evidence that the supreme court did not intend to limit the decision in Tucker to orders denying summary judgment.