720 So.2d 276 (1998)
Henry HUERTA, Appellant,
v.
HILLSBOROUGH COUNTY, a political subdivision of the State of Florida, and Pat Gray Bean, Appellees.
No. 97-01845.
District Court of Appeal of Florida, Second District.
October 23, 1998.
Jeffrey A. Blau of Jeffrey A. Blau, P.A., Tampa, for Appellant.
Robert E. Brazel, Assistant County Attorney, Tampa, for Appellees.
PER CURIAM.
Henry Huerta seeks reversal of the trial court's partial final summary judgment in favor of appellee, Pat Gray Bean, based on qualified immunity. Bean conceded for purposes of the summary judgment hearing that the trial court accept as true the allegations of the complaint. We reverse because these allegations establish that Bean, in exercising her discretionary function as a government official, violated Huerta's clearly established constitutional right of freedom of speech.
Huerta was employed by Hillsborough County for seventeen years. Prior to being fired by the County and Bean, he was the Executive Manager of the Office of Consumer Affairs and Child Care Licensing. His job evaluations were generally favorable. On June 9, 1991, Huerta was quoted by the Tampa Tribune in an article that was critical *277 of the County's child care licensing program. Allegedly, the quoted statements were in a "kind of negative slant."[1] Two days after the appearance of the article, Bean, on behalf of the County, fired Huerta. Huerta maintains he was fired because of the statements attributed to him in the newspaper article. Bean, on the other hand, has stated she did not fire Huerta because of the article. In fact, she said she did not review the article prior to Huerta's termination. However, for purposes of the amended motion for summary judgment on qualified immunity, Bean assumed the facts in the complaint to be true, including the assertion that Huerta's termination was based solely on his speech.
On June 21, 1993, Huerta filed suit alleging the County and Bean, acting under color of law, deprived him of rights and privileges guaranteed by the Constitution and Laws of the United States pursuant to 42 U.S.C. §§ 1983 and 1988. After denying motions for summary judgment filed by the County and Bean, the trial court granted Bean's amended motion for summary judgment based on qualified immunity. This appeal followed.
The parties agree that a government official, such as Bean, is entitled to qualified immunity from civil suit in the performance of discretionary functions when the official's conduct does not violate any clearly established statutory or constitutional right of which a reasonable person should have known. See Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); Tucker v. Resha, 610 So.2d 460 (Fla. 1st DCA 1992), quashed on other grounds, 648 So.2d 1187 (Fla.1994). The trial court, in applying this principle of law, opined that Huerta's constitutional rights were not clearly established at the time of his termination and ruled that Bean was entitled to qualified immunity. The trial court erred in applying the law to the facts of this case, and we, therefore, reverse the trial court's dismissal of Bean from this case.
The United States Supreme Court has continually held that a public employee's employment cannot be conditioned on his relinquishment of the constitutional right to free expression that he would otherwise enjoy as a citizen. See O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996); Pickering v. Board of Educ. of Township High School Dist. 205, Will Cty., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). When the subject matter of the speech is one of legitimate public concern, as opposed to one of a personal concern, the public employee must be able to speak out on such an issue without fear of a retaliatory dismissal. Statements by a public employee that are substantially correct may not be used as grounds for dismissal even though they are critical in tone. See Pickering, 391 U.S. at 570, 88 S.Ct. 1731. However, recognizing that the employer has an interest in promoting the efficiency of the public services it performs, the courts must seek a balance between the employer's interest and the interest of the employee in commenting on a matter of public *278 concern. See Pickering, 391 U.S. at 568, 88 S.Ct. 1731.
The application of the balancing test to the facts of this case clearly demonstrates Huerta's right to free expression on the subject matter. Huerta spoke on the issue of licensing and inspection of day care facilities. Not only was Huerta the executive manager for child care licensing and qualified to make an informed opinion on the issue as it existed in Hillsborough County, but the subject is also one of public importance affecting numerous families in the County. There is nothing in the record to suggest that the statements made by Huerta were false or that they in any way impeded the proper performance of his duties. The County and Bean conceded for purposes of the summary judgment that the termination was based solely on his speech, and there is nothing to suggest that the termination was justified in light of any competing social interests.
Because Huerta has a constitutional right to expression on a subject that is of public concern, the trial court erred in granting the summary judgment based on qualified immunity. We reverse the partial final summary judgment and remand for further proceedings.
PARKER, C.J., and BLUE and QUINCE, JJ., concur.
NOTES
[1] The quotes and statements attributable to Huerta include the following:

"Your review of a center has to be quicker when you have to conduct, say, 115 inspections three times a year," says Henry Huerta, the county's director of child care licensing.
"We're mandated by law to complete so many inspections. In reality, if we had sufficient personnel, we would spend more time at each."
Huerta admits that the larger work loads can hurt the quality of inspections.
But the center may have violated a local ordinance that requires officials be notified of a change in director, Huerta says.
"We get complaints that children are not being fed or the place is dirty and smells bad," Huerta says.
"But lots of times by the time we get there, the problem doesn't exist anymore."
Huerta says according to national standards, child-care licensing inspectors should be assigned an average of 50 facilities. In Hillsborough, inspectors have more than 100.
Huerta says his office is pushing to have the day-care home requirement bumped down to twice a year to leave more time for inspectors to concentrate on problem centers.
Huerta says parents should chose a cheery, well-lit facility with bright, colorful walls.
"They could have four gray walls and still be in compliance," he says. "Some are well lit and happy and others can be made to look morbid."
If most of them seem withdrawn, Huerta says, that could be a sign that employees rule with an iron fist, intimidating the youngsters.