DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WPB RESIDENTS FOR INTEGRITY IN GOVERNMENT, INC.,
CORNERSTONE SOLUTIONS FLORIDA, LLC,** and **PRADEEP ASNANI**
a/k/a **RICK ASNANI,**
Petitioners,

v.

**SHARON "SHANON" MATERIO,**
Respondent.

Nos. 4D19-967 and 4D19-997

[October 30, 2019]

Consolidated petitions for writ of certiorari to the Fifteenth Judicial Circuit, Palm Beach County; Jeffrey Dana Gillen, Judge; L.T. Case No. 50-2018-CA-012422.

Leonard Feuer of Leonard Feuer, P.A., West Palm Beach, for petitioner, WPB Residents For Integrity In Government, Inc.

William N. Shepherd, Seth J. Welner and Jeff Schacknow of Holland & Knight LLP, West Palm Beach, for petitioners, Cornerstone Solutions Florida, LLC, and Pradeep Asnani a/k/a Rick Asnani.

Joseph W. Janssen, III, John M. Siracusa and Mark G. Keegan of Janssen, Siracusa & Keegan PLLC, West Palm Beach, for respondent.

Frank A. Shepherd of GrayRobinson, P.A., Miami, for Amicus Curiae, Americans for Prosperity and the Public Participation Project, and First Amendment Foundation.

PER CURIAM.

After losing an election for city commission, a former candidate filed a lawsuit against political opponents for defamation and conspiracy to defame.

Before the election, these opponents sent a direct mail piece to targeted voters in West Palm Beach claiming that the candidate knew how to "work the system" because she claimed homestead exemptions in both Palm

Beach and St. Lucie Counties and received a federally-funded grant intended for low income homeowners in St. Lucie County.

The opponents, who are the petitioners in this court, moved for summary judgment and to dismiss the suit on the merits, arguing that their political speech was protected under Florida's Anti-SLAPP statute, section 768.295, Florida Statutes (2018).[1] The circuit court denied their motions, ruling that the mailer was not protected speech under the statute.

Petitioners have sought review by a petition for writ of certiorari.

We dismiss the petition because petitioners have failed to demonstrate one of the jurisdictional prerequisites for certiorari jurisdiction—irreparable harm. Based on binding Florida Supreme Court precedent, we certify conflict with *Gundel v. AV Homes, Inc.*, 264 So. 3d 304 (Fla. 2d DCA 2019).

Given the current state of the law, the appropriate remedy would be for the Supreme Court to amend Florida Rule of Appellate Procedure 9.130 to allow for nonfinal appeals of orders denying summary judgment or dismissal of a claim brought under section 768.295. The express legislative intent of subsection 768.295(4) is to secure a speedy decision at "the earliest possible time" on a summary judgment or motion to dismiss.

*Facts*

Sharon "Shanon" Materio was the incumbent candidate running for West Palm Beach City Commission in March of 2018. Her opponent hired Pradeep "Rick" Asnani, president of Cornerstone Solutions Florida, LLC. Asnani worked with WPB Residents for Integrity in Government, Inc., an electioneering communications organization (the "ECO"), to create a two-sided postcard (the "mailer").

The mailer was a "paid electioneering communication," defined by statute as a:

> communication that is publicly distributed by a television station, radio station, cable television system, satellite system, newspaper, magazine, direct mail, or telephone and that:

---

[1] According to the title of section 768.295, SLAPP is an acronym for "Strategic Lawsuits Against Public Participation."

1. Refers to or depicts a clearly identified candidate for office without expressly advocating the election or defeat of a candidate but that is susceptible of no reasonable interpretation other than an appeal to vote for or against a specific candidate;

2. Is made within 30 days before a primary or special primary election or 60 days before any other election for the office sought by the candidate; and

3. Is targeted to the relevant electorate in the geographic area the candidate would represent if elected.

§ 106.011(8)(a), Fla. Stat. (2018).

The mailer implied that Materio had illegally claimed a second homestead exemption on a home in Port St. Lucie, and that she received a federally-funded grant intended for low income residents of Port St. Lucie. The mailer is reproduced below:





The mailer was sent to voters within 30 days before the election, and Materio thereafter lost her bid for reelection.

Materio sued Cornerstone, Asnani, and the ECO alleging four causes of action:

> Count I – Defamation per se against the ECO;
> Count II – Defamation per se against Cornerstone;
> Count III – Defamation against Asnani; and
> Count IV – Conspiracy to Defame against all Defendants.

The defendants moved to dismiss the complaint and for summary judgment, arguing that the statements made in the mailer were true, that there was no actual malice, and that Materio's causes of action were prohibited by Florida's Anti-SLAPP statute, which protects the exercise of the right of "free speech in connection with public issues." § 768.295(1), Fla. Stat.

After a hearing, the circuit court denied the defendants' motions. The court ruled that the Anti-SLAPP statute was "in derogation of the common law and an impediment to the constitutional guarantee of access to the courts." Because the statute was in derogation of the common law, the court determined that it "must be strictly and narrowly construed." The court then noted that the Anti-SLAPP statute "contains a list of communication types or mechanisms for which it does provide protection," and that electioneering communications were "not any one of the types of communications set forth in the statute." Applying the doctrine *expressio unius est exclusio alterius*, the court concluded that the legislature intentionally omitted "electioneering communications" from the statute's list of protected communications.

*Certiorari Jurisdiction*

It is well settled that

> [a] non-final order for which no appeal is provided by rule 9.130 may be reviewable by petition for a writ of certiorari, but only in very limited circumstances. The petitioning party must demonstrate that the contested order constitutes (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case, (3) that cannot be corrected on postjudgment appeal.

*Bd. of Trustees of Internal Improvement Tr. Fund v. Am. Educ. Enterprises, LLC*, 99 So. 3d 450, 454 (Fla. 2012) (internal quotation marks and citation omitted). "The last two elements, often referred to as 'irreparable harm,' are jurisdictional." *Nucci v. Target Corp.*, 162 So. 3d 146, 151 (Fla. 4th DCA 2015).

> When we receive a petition for common law certiorari to review a nonfinal order, we will initially study it only to determine if petitioner has made a prima facie showing of the element of irreparable harm. At this stage we will make no determination as to whether the order departs from the essential requirements of law. If petitioner has failed to make a prima facie showing of irreparable harm, we lack jurisdiction and will enter an order *dismissing* the petition.

*Bared & Co., Inc. v. McGuire*, 670 So. 2d 153, 157 (Fla. 4th DCA 1996).

The general rule is that the continuation of litigation "does not constitute irreparable harm" for purposes of seeking certiorari review. *Rodriguez v. Miami-Dade Cty.*, 117 So. 3d 400, 405 (Fla. 2013).

The second district has concluded that certiorari jurisdiction may lie when a trial court denies a SLAPP target's motion to dismiss or for summary judgment. *Gundel*, 264 So. 3d at 309-311. To understand the *Gundel* holding, a brief discussion of Florida's Anti-SLAPP statute is necessary.

A SLAPP is a "lawsuit, cause of action, claim, cross-claim, or counterclaim" filed against a person or entity that is "without merit" and filed "primarily because" the person or entity engaged in the exercise of a right protected by the First Amendment to the U.S. Constitution. §

768.295(3), Fla. Stat.  The Anti-SLAPP statute prohibits such actions and provides a procedural mechanism for SLAPPs to be "expeditiously disposed of by the courts." § 768.295(1), Fla. Stat.  The expressed public policy is that people and governmental entities "*not engage in SLAPP suits* because such actions are inconsistent with the right of persons to exercise . . . constitutional rights of free speech in connection with public issues." *Id.* (emphasis added).

Florida's Anti-SLAPP statute was enacted in 2000 and the Legislature declared the public policy of Florida in the preamble:

> [SLAPPs] are typically dismissed as unconstitutional, but often not before the defendants are put to great expense, harassment, and interruption of their duties, and
> . . .
> [SLAPPs] are an abuse of the judicial process and are used to censor, intimidate, or punish citizens, businesses, and organizations for involving themselves in public affairs, and
> . . .
> the threat of financial liability, litigation costs, destruction of one's business, loss of one's home, and other personal losses from groundless lawsuits seriously affects government, commerce, and individual rights by significantly diminishing public participation in government, in public discourse, and in voluntary public service . . . .

Ch. 00-174, 2000 Fla. Laws 1.  The second district in *Gundel* recognized that

> the legislature has made it a matter of Florida public policy to recognize and dismiss SLAPP suits expeditiously because the very filing and continuation of SLAPP suits has the chilling effect on constitutional rights that the Anti-SLAPP statute was enacted to prevent . . . .

264 So. 3d at 310; *see generally Varian Med. Sys., Inc. v. Delfino,* 35 Cal. 4th 180, 193 (2005) (stating that "[t]he point of [an] anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights.") (citation omitted).

In *Gundel*, homeowners sued the developers of their community alleging violation of the Florida Homeowners' Association Act and the Deceptive and Unfair Trade Practices Act.  The developers counterclaimed based on the homeowners' conduct in "actively and vocally contesting" the

developers' plans. 264 So. 3d at 307. The homeowners moved to dismiss the counterclaims and for summary judgment, citing the Anti-SLAPP statute. *Id.* at 308. The trial court denied the homeowners' motion to dismiss and declined to review their motion for summary judgment. *Id.* at 309. The homeowners petitioned for certiorari review.

The second district held that the homeowners made a *prima facie* showing of irreparable harm. The court reasoned that the target of a SLAPP is harmed by "the very filing and continuation of" the SLAPP. *Id.* at 310. The court likened the Anti-SLAPP statute to statutes providing for immunity from suit "where the statutory protection cannot be adequately restored once it is lost through litigation and trial." *Id.* at 311 (citing *James v. Leigh*, 145 So. 3d 1006 (Fla. 1st DCA 2014)). The court found that the right created by the Anti-SLAPP statute is the "right not to be subject to meritless suits" filed primarily because the SLAPP target exercised a constitutional right. *Id.* at 310. The court stated that the "harm" that results from the improper denial of a motion to dismiss a SLAPP suit "is precisely the harm that the Anti-SLAPP statute seeks to prevent— unnecessary litigation." *Id.* at 311. The court held:

> [I]f certiorari review is not available, the substantive right created by the Anti-SLAPP statute is illusory and the very policy that animates the decision to prevent SLAPP suits is frustrated such that the statutory protection becomes essentially meaningless for the individual defendant.

*Id.* at 311 (internal quotation marks and citation omitted).

*Gundel's* expansion of certiorari jurisdiction has the most commendable of motives—the desire to give effect to legislative intent by establishing a certiorari procedure that would allow a district court of appeal to expeditiously address the denial of motions that would terminate a suit falling under the SLAPP statute. However, *Gundel* conflicts with the Supreme Court's handling of certiorari involving immunity-related issues, where the public policy favoring early resolution of a lawsuit is similar to that expressed in section 768.295.

In both *Keck v. Eminisor*, 104 So. 3d 359 (Fla. 2012), and *Citizens Property Insurance Corp. v. San Perdido Ass'n, Inc.*, 104 So. 3d 344 (Fla. 2012), the Supreme Court was clear that, when public policy favors interlocutory review, the proper course is for the court to amend the non-final appeal rule, not to expand certiorari jurisdiction. For example, in *Keck,* the Court wrote:

> [In *Tucker v. Resha*, 648 So. 2d 1187 (Fla. 1994),] [w]e held that an order denying summary judgment based upon a claim of qualified immunity should be subject to interlocutory review to the extent that the order turns on an issue of law. [*Id.* at 190]. <u>However, we did not reach this result by expanding the scope of certiorari review</u>, but instead requested the Florida Bar Appellate Court Rules Committee to submit a proposed amendment that addressed such a rule change. *See id.*

104 So. 2d at 365 (amending appellate rule while emphasizing: "[a]s in *Tucker*, we do not utilize the common law writ of certiorari for review of a claim of individual immunity") (emphasis added).

In *San Perdido*, the Court set out the correct procedure for a case such as this:

> On previous occasions, this Court had the opportunity to expand the writ of certiorari to similar cases involving the interlocutory review of a denial of a motion to dismiss. In each situation, we declined to do so, finding that the proper avenue would be to amend rule 9.130, so long as sufficient policy reasons justified interlocutory review.
>
> . . . .
>
> <u>Again</u>, <u>it must be stressed</u> that in reaching this conclusion, the Court did not utilize the writ of certiorari. Rather, we requested the Florida Bar Appellate Court Rules Committee to submit a proposed amendment that would add a category of non-final orders for qualified immunity in a federal civil rights claim.

104 So. 3d at 352-53 (emphasis added).

Unlike a case-by-case expansion of certiorari jurisdiction by district courts of appeal, which would create an imprecise, twisty jurisdictional line, a rule change sets a bright-line jurisdictional rule. Different courts will reach different conclusions in evaluating whether there has been a departure from the essential requirements of law necessary for certiorari jurisdiction. In deciding on a rule change, the Supreme Court is uniquely situated to weigh the competing policies implicated by an expansion of appellate jurisdiction to accommodate immunity or Anti-SLAPP related issues. As the Court pointed out in *Keck,*

when considering whether there are compelling reasons to amend rule 9.130 for claims of individual immunity such as in this case, we look to numerous policy considerations, including the nature of the rights involved, the likelihood that this issue will reoccur in the future, whether the issue of law can be resolved without resolution of factual issues, and the amount of increased workload that expanding rule 9.130 would have on appellate courts throughout the state. We also examine our prior precedent where we made such policy decisions.

104 So. 3d at 365. A rule change would permit the entire class of cases to be heard on appeal instead of the piecemeal approach of certiorari procedure.

We recognize that the Anti-SLAPP statute was enacted, in part, to prevent SLAPP targets from enduring "great expense, harassment, and interruption of their duties" and to prevent targets from enduring the "threat of financial liability, litigation costs, destruction of one's business, loss of one's home, and other personal losses from groundless lawsuits." Ch. 00-174, 2000 Fla. Laws 1. The harm the statute seeks to prevent is the *filing* of the lawsuit for the purpose of suppressing the exercise of First Amendment rights. The longer such suits linger, the greater the expense and interruption of the lives of the targets, the greater the threat of financial liability, and the greater the chill on the exercise of constitutional rights. When meritless lawsuits are not "expeditiously disposed of," the SLAPP target will suffer precisely the sort of harm that the statute was designed to prevent. These considerations might well convince the Supreme Court to amend Appellate Rule 9.130 to allow non-final appeals from motions brought under subsection 768.295(4).

For these reasons, we hold that the petitioners have not made a *prima facie* showing of irreparable harm sufficient to invoke this court's certiorari jurisdiction. On this issue, we certify conflict with *Gundel,* 264 So. 3d 304.

*The petition for writ of certiorari is dismissed.*

GROSS, MAY and FORST, JJ., concur
GROSS, J., concurs specially with opinion.
FORST, J., concurs specially with opinion

GROSS, J., concurring specially.

I concur in the dismissal of this case for the failure of the petitioners to demonstrate irreparable harm. I write only to demonstrate that if an interlocutory appeal were available to the petitioners, they would be successful in reversing the circuit court's order.

On this record, the circuit court erred in its construction of section 768.295 and in ruling that electioneering communications are not protected speech under the Anti-SLAPP statute.

*Protected Speech Under the Anti-SLAPP Suit*

Upon filing their motions to dismiss and for summary judgment, the defendants bore the burden of establishing that creating and sending the mailer constituted protected activity under the Anti-SLAPP statute. *See Gundel*, 264 So. 3d at 314 (discussing the shifting burden). The statute protects parties when they exercise "the rights of free speech in connection with public issues." § 768.295(1), Fla. Stat. The statute elaborates:

> "Free speech in connection with public issues" means *any written or oral statement that is protected under applicable law* <u>and</u> is made before a governmental entity in connection with an issue under consideration or review by a governmental entity, <u>or</u> *is made in or in connection with* a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, *or other similar work*.

§ 768.295(2)(a) (emphasis added).

The fundamental interpretive error committed by the trial judge is that he construed section 768.295(2)(a) narrowly, when the plain language of the statute and proper application of rules of construction demand an expansive interpretation. The trial court's construction effectively stripped the statute of the protections it was designed to implement.

The plain language of the section reveals that the statute's list of protected works is *non-comprehensive*. The list is introduced with a catchall phrase that protects not only statements made "in" an enumerated work, but also statements made "in connection with" an enumerated work. The list ends with a second catchall phrase that promises protection for statements made in or in connection with other works that are "similar" to the enumerated works.

- 10 -

"It is a cardinal rule that a statute should be construed so as to ascertain and give effect to the intention of the Legislature as expressed in the statute." *Deltona Corp. v. Fla. Pub. Serv. Comm'n*, 220 So. 2d 905, 907 (Fla. 1969). "When the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent . . . . In such instance, the statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent." *Daniels v. Fla. Dep't of Health*, 898 So. 2d 61, 64 (Fla. 2005) (internal citation omitted). "If the statutory language is unclear, we apply rules of statutory construction and explore legislative history to determine legislative intent." *BellSouth Telecomm., Inc. v. Meeks*, 863 So. 2d 287, 289 (Fla. 2003).

As observed by the trial court, the Anti-SLAPP statute's enumerated list of protected works does not include direct mail pieces or "electioneering communications." The mailer here fell under the second catchall phrase in section 768.295(2)(a)—"other similar work."

To clarify, the statute expressly protects any written or oral statement made in *or in connection with* a:

- play
- movie
- television program
- radio broadcast
- audio visual work
- book
- magazine article
- musical work
- news report
- *or other similar work.*

*Id.* (Emphasis added).

The works listed in the statute are all common modes for the exercise of free speech on public issues. The plain language of the statute shows that the list is non-exclusive and that it protects other similar modes for widely disseminating protected First Amendment speech. *See* Samuel J. Morley, *Florida's Expanded Anti-SLAPP Law: More Protection for Targeted Speakers*, 90 Fla. B.J. 16, 22 (Nov. 2016) (surmising that the works are related in that they are formats "designed to communicate to or elicit viewpoints from members of the public on issues of public interest").

Even though the enumerated list does not include "postcard," "mailer," or "direct mail piece," the mailer is similar to the enumerated works in that it was created to communicate information to a targeted audience in a

political election. The mailer therefore fits within the statute's second catchall phrase and is protected by the Anti-SLAPP statute.

The trial court erred in two respects in construing section 768.295. First, the strict and narrow construction was improperly imposed on a remedial statute. Second, the court misapplied the doctrine of *expressio unius est exclusio alterius* to construe the statute.

The trial court narrowly construed the statute because the court found that the statute was in derogation of common law. However, this finding should not have ended the inquiry. As Petitioners argue, the statute is remedial, and remedial statutes are liberally construed, regardless of whether they are in derogation of the common law.

> A remedial statute is "designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good." It is also defined as "(a) statute giving a party a mode of remedy for a wrong, where he had none, or a different one, before." Black's Law Dictionary, 5th Ed., 1979.

*Adams v. Wright*, 403 So. 2d 391, 394 (Fla. 1981). The Anti-SLAPP statute squarely fits the definition of a remedial statute because it gives a SLAPP target a remedy for a wrong (early dismissal of a SLAPP) where none existed before.

"When a statute is both in derogation of the common law and remedial in nature, the rule of strict construction should not be applied so as to frustrate the legislative intent . . . . *The statute should be construed liberally in order to give effect to the legislation.*" *Irven v. Dep't of Health & Rehab. Services*, 790 So. 2d 403, 406 (Fla. 2001) (internal citations omitted) (emphasis added); *see also Klepper v. Breslin*, 83 So. 2d 587, 592 (Fla. 1955). As a remedial statute, section 768.295 should be liberally construed to give effect to the legislative intent.

The plain language of the statute reveals that the trial court also erroneously applied the *expressio unius* doctrine. Where, as here, a statute contains a broad catchall provision at the end of a list of specific items, the Legislature did not intend to restrict the statute's applicability to those items found on the list. To interpret the statute as excluding any work that is not on the list would be to ignore the Legislature's chosen words and render the second catchall ("or other similar works") as surplusage. "[A] court may not generally ignore or delete words used by the Legislature in a statutory provision absent a finding that 'the words at

issue are so meaningless or clearly inconsistent with the legislative intent that they should be ignored as mere surplusage.'" *P.D. v. Dep't of Children & Families*, 866 So. 2d 100, 102 (Fla. 1st DCA 2004) (quoting *Greenberg v. Cardiology Surgical Ass'n*, 855 So. 2d 234, 237 (Fla. 1st DCA 2003)).

Liberal construction of the statute leads to the conclusion that the defendants met their burden of establishing that the mailer was protected "free speech in connection with public issues" and therefore a protected activity under section 768.295.

*Materio Failed To Meet Her Burden At Summary Judgment[2]*

Once an alleged SLAPP target meets its burden, the burden shifts to the party bringing the alleged SLAPP (here, Materio) to demonstrate that their claims are not without merit and were not filed primarily because the target exercised the constitutional right of free speech in connection with a public issue. *See Gundel*, 264 So. 3d at 313; § 768.295(3).

On its face, the mailer is political speech protected under the First Amendment. *See, e.g., Concerned Citizens for Judicial Fairness, Inc. v. Yacucci*, 162 So. 3d 68, 73 (Fla. 4th DCA 2014). Materio's lawsuit was obviously filed in response to the defendants' exercise of their constitutional right of free speech in connection with a public issue by creating and distributing the mailer. If Materio's claims are also "without merit," her suit should be dismissed as a SLAPP.

Because Materio was a public figure, on summary judgment she was required to "present *record evidence* sufficient to satisfy the court that a genuine issue of material fact exists which would allow a jury to find by clear and convincing evidence the existence of actual malice on the part of [the defendants]." *Mile Marker, Inc. v. Petersen Publ'g, LLC*, 811 So. 2d 841, 846-47 (Fla. 4th DCA 2002); *see also* Fla. R. Civ. P. 1.510(c). Based on the summary judgment evidence, Materio did not meet her burden. Her claims are therefore "without merit" under section 768.295(3).

The statements made in the mailer could fairly be drawn from public records. The mailer cites to those records it relied upon for those statements, so an interested person might examine those records for

---

[2] Consistent with the parties' actions in the circuit court and in this court, the issue presented was one decided on summary judgment in the trial court. *See Brewer v. Clerk of Circuit Court, Gadsden Cty.*, 720 So. 2d 602, 604 (Fla. 1st DCA 1998) ("In effect, the parties treated the hearing on the motion to dismiss as a summary judgment hearing.").

accuracy. "Reliance upon a reliable source insulates a defendant from a finding of actual malice as a matter of law." *Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 296 (Fla. 2d DCA 2001).

On appeal, this court views the evidence most favorably to the nonmoving party "to determine whether there exists a genuine issue of material fact upon which a reasonable jury could find with convincing clarity that [the defendants] acted with such actual malice . . . ." *Lampkin-Asam v. Miami Daily News, Inc.*, 408 So. 2d 666, 668 (Fla. 3d DCA 1981). "This is the well-accepted test for evaluating the propriety of a summary judgment in a defamation case where actual malice in the constitutional sense must be shown." *Id.* at n. 3. When the plaintiff in a defamation action is a public figure and the actual malice test applies, "summary judgments are to be more liberally granted." *Dockery*, 799 So. 2d at 294.

Actual malice in this context means a statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964). "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Recklessness may be found where "a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call;" "when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation;" or "where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Id.* at 732. For "actual malice," ill will is not enough, nor is an intention to portray a public figure in a bad light. *Don King Productions, Inc. v. Walt Disney Co.*, 40 So. 3d 40, 44 (Fla. 4th DCA 2010).

A careful review of the record leads to the conclusion that Materio did not present sufficient record evidence to establish a genuine issue of material fact that would allow a jury to find by clear and convincing evidence that the defendants acted with actual malice. Public records provided the defendants with a good faith basis to believe the truth of the statements made in the mailer. Materio brought forth no *facts* that the defendants knew otherwise. For that reason, Materio failed to establish that her defamation claim was meritorious and the defendants were entitled to summary judgment and a finding that Materio's lawsuit was a SLAPP, prohibited by section 768.295, Florida Statutes.

FORST, J., concurs specially with opinion.

- 14 -

"[A] dismissal of a petition seeking common law certiorari represents only a determination that we lack jurisdiction and nothing more." *Bared & Co., Inc. v. McGuire*, 670 So. 2d 153, 157 (Fla. 4th DCA 1996). As we have determined that we do not have jurisdiction to grant the petition for writ of certiorari, I do not believe it is appropriate at this juncture to render a view as to the merits of the parties' legal arguments or of the circuit court's reasoning in denying Petitioners' motions for summary judgment and dismissal. I concur in the opinion finding an absence of certiorari jurisdiction. So lacking, any opinion addressing the merits would be an advisory opinion. This court lacks authority to render such opinions. *See Wells v. Ward*, 314 So. 2d 138, 140 (Fla. 1975) (England, J., concurring specially); *Merkle v. Guardianship of Jacoby*, 912 So. 2d 595, 599 (Fla. 2d DCA 2005) ("With limited exceptions . . . Florida's appellate courts are not authorized to issue advisory opinions.") (citation omitted).

*       *       *

***Not final until disposition of timely filed motion for rehearing.***