PALMER, J.
George Gionis appeals the non-final order entered by the trial court denying his motion for summary judgment which alleged that he was immune from suit based upon the doctrine of qualified immunity. *417 Although the order denying the motion for summary judgment is not an appealable, non-final order, we exercise our discretion to treat Gionis’ notice of appeal as being a petition for a writ of certiorari and, concluding that the order constitutes a departure from the essential requirements of law resulting in material injury that cannot be corrected on post-judgment appeal, we grant the petition and quash the order.
The instant action began when Avco Financial Services of Florida filed suit against Henry Hardy and his wife Mary, alleging default on a note and mortgage related to land on which they operated a tree business. Florida’s Department of Environmental Regulation (DER) was named as a party defendant in that lawsuit because DER had claimed an interest in the property by virtue of a lis pendens relating to the Hardys’ alleged violations of environmental statutes and regulations. The Hardys filed a third party complaint against numerous employees of DER, including Gionis, in their individual capacities. The complaint sought recovery based upon claims that DER had embarked on a campaign of harassing investigations, civil actions, and criminal actions, designed to harass or extort the Hardys into compliance with unreasonable and unconstitutional policies or regulations. DER’s actions were precipitated by complaints alleging that the Hardys were using their property, some of which included jurisdictional wetlands, for the improper dumping of yard materials.
Of particular importance to the instant appeal, Count VIII of the Hardys’ third party complaint alleged a claim against Gionis under 42 U.S.C. § 1983, asserting that Gionis had violated the Hardys’ civil rights by reason of his deliberate indifference as manifested by his failure to supervise, control, and/or discipline his employees, including Brian Carr, in connection with their harassment of the Hardys. Gionis subsequently filed a motion for summary judgment as to Count VIII, on the basis that he was immune from suit under the doctrine of qualified immunity. The trial court denied the motion, noting:
[Tjhis Court finds that there are no disputed material facts but finds that various inferences may be drawn from those facts which is a jury question. Of particular concern to this Court is the allegation from Hugh Harling that Brian Carr was dangerous. Because Carr’s investigation ultimately resulted in criminal charges being filed against Mr. Hardy, that were subsequently vacated on appeal, this Court finds that the jury could determine that George Gionis acted with deliberate indifference in his supervision of Carr and is therefore not entitled to qualified immunity.
Gionis thereafter filed a notice of appeal of a non-final order challenging the correctness of this ruling.
The first issue presented to this court is whether the trial court’s order denying Gionis’s motion for summary judgment as to Count VIII is an appealable, non-final order. It is not.
Generally, trial court orders denying motions for summary judgment are non-final, non-appealable orders. See Nat’l Assurance Underwriters, Inc. v. Kelley, 702 So.2d 614 (Fla. 4th DCA 1997). However, rule 9.130(a)(3)(C)(viii) of the Florida Rules of Appellate Procedure recognizes an exception to this principle, stating that appellate review is proper of a non-final order when the order holds “that, as a matter of law, a party is not entitled to absolute or qualified immunity in a civil rights suit arising under federal law.” This exception is not applicable here, because the trial court’s ruling is based upon disputed issues of fact, not a conclusion of law. See Stephens v. Geoghegan, 702 So.2d 517 (Fla. 2d DCA 1997). As this *418 court explained in Tindel v. Kessler, 772 So.2d 599 (Fla. 5th DCA 2000), in order for the trial court to issue a renewable summary judgment order in a federal civil rights case denying defendants their immunity defenses, the order must state that those defenses, as a matter of law, are not available.
Our conclusion that the trial court’s order is a non-fínal, non-appealable order does not require dismissal of the instant appeal for lack of jurisdiction because, as both parties acknowledge, discretionary certiorari review is available for an order which denies a motion for summary judgment based upon the rejection of a defendant’s claim of qualified immunity. In Stephens, the Second District granted cer-tiorari review on the basis that the trial court’s denial of a claim of qualified immunity constituted a departure from the essential requirements of the law which resulted in material injury that could not be corrected on post-judgment appeal,- explaining:
Here, the defendants correctly argue that absolute and qualified immunity for public officials are not merely defenses to liability; as the terms themselves imply, they protect a public official from having to defend a suit at all. This entitlement is lost if the defendant is required to go to trial; having been forced to defend the suit, the public official cannot be re-immunized after-the-fact. Because of the nature and purpose of a claim of immunity, an appeal after final judgment would not be an adequate remedy. Accordingly, we hold that [the defendants] have established the requisite material harm, irreparable on appeal after judgment, needed to invoke our certiorari jurisdiction.
702 So.2d at 521(citation omitted).
Treating the instant appeal as a petition seeking certiorari review, the dis-positive issue becomes whether the trial court’s order constitutes a departure from the essential requirements of the law, resulting in material injury that cannot be corrected on post-judgment appeal. We conclude that it does.
In Junior v. Reed, 693 So.2d 586 (Fla. 1st DCA 1997), the First District cogently explained the doctrine of qualified immunity and mapped out the analysis in which our courts must engage when considering such a claim. In that case, certain landowners brought a third-party § 1983 action against the chairman of the board of county commissioners seeking to recover damages for alleged violations of due process. In discussing the analysis used in addressing a plaintiffs claim under § 1983 and a defendant’s claim of qualified immunity, the court first noted that a person deprived of a federal right by a state or local official acting under color of state law can seek redress under § 1983, but the right to sue is subject to well-defined limitations.
In discussing said limitations, the court explained that the United States Supreme Court has consistently held that government officials are entitled to two kinds of immunity from such lawsuits, absolute immunity and qualified immunity. Id. at 589 (citing to Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The court proceeded to explain that the “protection afforded by qualified immunity is the norm, ... and is intended to shield government officials from suit in all but exceptional cases.” Id. at 590 (citing to Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) and Lassiter v. Alabama A & M Univ., 28 F.3d 1146 (11th Cir.1994)).
In explaining the proper analysis to undertake when reviewing a qualified immu *419 nity claim, the First District stated that there are two distinct elements to the defense. The first element is proof that the acts in question were discretionary governmental functions. Once it is established that the acts in question were discretionary governmental functions, the second element requires the plaintiff to demonstrate that the government official violated the plaintiffs clearly established statutory or constitutional rights.
As for the first prong, there is no question that Gionis satisfied his initial burden of proving that his alleged improper actions fell within the confines of his discretionary governmental function since neither party has maintained otherwise. Concerning the second prong, the Hardys were required to prove that Gionis’ alleged improper conduct violated their constitutional rights. Review of the Hardys’ brief reveals that the constitutionally protected rights allegedly violated included (1) the right to be free from harassment, extortion and intimidation, and the right to enjoy one’s property unburdened by arbitrary and capricious regulation; and (2) the right protected by the due process clause of the United States Constitution to engage in their occupation of tree removal and mulching.
At this point, an additional legal distinction must be recognized in order for this court to properly analyze Gionis’ claim for certiorari relief. Specifically, Gionis is being sued by the Hardys for his “deliberate indifference” in his role as supervisor of DER employees who allegedly violated the Hardys’ constitutional rights. Where a § 1983 claim is based upon allegations of a government official’s failure to properly supervise his employees, liability can be found only upon a showing that such failure amounts to deliberate indifference to the legal rights of the persons with whom the employees came in contact because supervisory personnel cannot be held liable under § 1983 for the acts of their subordinates under the doctrine of respon-deat superior. Carter v. City of Philadelphia, 181 F.3d 339 (3d Cir.), cert denied, 528 U.S. 1005, 120 S.Ct. 499, 145 L.Ed.2d 385 (1999).
In City of Hialeah v. Fernandez, 661 So.2d 335 (Fla. 3d DCA 1995), the Third District aptly explained that, in order to establish deliberate indifference by a supervisor, the plaintiff is required to make a substantial showing:
We have set forth three elements necessary to establish supervisory liability under § 1983:(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed “a pervasive and unreasonable risk” of constitutional injury to citizens like the plaintiff; (2) that the supervisor’s response to that knowledge was so inadequate as to show “deliberate indifference to or tacit authorization of the alleged offensive practices”; and (3) that there was an “affirmative causal link” between the supervisor’s inaction and the particular constitutional injury suffered by the plaintiff.
To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor’s knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Establishing a “pervasive” and “unreasonable” risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. A plaintiff may establish deliberate indifference by demonstrating a supervisor’s “continued inaction in the face of docu *420 mented widespread abuses.” The plaintiff assumes a heavy burden of proof in establishing deliberate indifference because:
[o]rdinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor’s continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.
Id. at 341-342 (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994) (citations omitted)). See also Brown v. Crawford, 906 F.2d 667, 671 (11th Cir.1990), cert. denied, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991) (stating that a causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; the deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued, duration, rather than isolated occurrences); Daniels v. Delaware, 120 F.Supp.2d 411, 423 (D.C.De.2000)(explaining that, in order to establish a § 1983 claim for failure to supervise employees, a plaintiff must identify with particularity what the supervisory officials failed to do that demonstrates deliberate indifference, and demonstrate a close causal link between the alleged failure and the alleged injury).
In applying this case law to the instant facts, it must be determined first whether Gionis had actual or constructive knowledge that his employees were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Hardys. In order to establish that a pervasive and unreasonable risk of harm so existed the Hardys were required to present the trial court with evidence that the DER employees’ improper conduct was widespread, or at least had occurred on several different occasions. The Hardys failed to present any such evidence.
The evidence of record reveals that when considering Gionis’ motion for summary judgment the trial court had the following evidence before it. First, the deposition of Henry Hardy contained statements concerning his contacts with Brian Carr, but presented no testimony that he ever spoke to Gionis about anything. The record evidence also included an affidavit submitted by Hugh Harling, who was retained by the Hardys to resolve their problem with DER. Harling stated that he met with Brian Carr on numerous occasions and that Carr exhibited a bullish attitude and intimidated those present, and that he had observed Carr on numerous occasions exhibiting a hostile and aggressive attitude toward Mr. Hardy. He further stated that he contacted Gionis and advised him of Carr’s intimidation and bullishness, and expressed his concerns for Carr’s total disregard for Mr. Hardy’s privacy and property rights, and that Gionis advised him that he would speak to Carr. The deposition of Gionis revealed that he did not recall receiving any complaints by citizens against Brian Carr. While he admitted that he may have had some conversation with Mr. Harling at one time about Mr. Carr being antagonistic or belligerent or overbearing, he had no recollection of any other person complaining about Carr’s *421 behavior. Gionis also testified that he never spoke to Mr. Hardy during the course of DER’s investigation of his property.
The undisputed facts refute the contention that the DER employees’ improper conduct posed a pervasive and unreasonable risk of constitutional injury to the Hardys. Gionis stated that he never received any citizen complaints relating to Brian Carr, and Harling’s affidavit simply establishes that one complaint was asserted by him to Gionis regarding Carr’s behavior. Accordingly, summary judgment should have been granted in favor of Gion-is on his claim of qualified immunity and the trial court’s failure to do so constituted a departure from the essential requirement of the law. We remand this matter so that the court can enter a judgment in favor of Gionis.
PETITION GRANTED, ORDER QUASHED, CAUSE REMANDED.
COBB and HARRIS, JJ., concur.