368 So.2d 945 (1979)
Neal H. DENSMORE, Appellant,
v.
The CITY OF BOCA RATON, a Florida Municipal Corporation, et al., Appellees.
No. 77-1953.
District Court of Appeal of Florida, Fourth District.
March 21, 1979.
*946 Richard E. Bosse, of Kurzinger & Honchell, P.A., Boca Raton, for appellant.
M.A. Galbraith, Jr., City Atty., Cormac C. Conahan, Sr., and Robert A. Eisen, Asst. City Attys., Boca Raton, and D. Culver Smith, III, of Adams, Coogler, Watson & Smith, West Palm Beach, for appellants.
ANSTEAD, Judge.
The appellant, Neal H. Densmore, seeks reversal of a final summary judgment entered on appellant's action for defamation and invasion of privacy in favor of appellees, Donald Crawford, the City of Boca Raton, and members of the city commission. We affirm.
Densmore was employed as a building inspector for the City of Boca Raton. In 1975 the city council instructed its attorneys to conduct an investigation of allegations of misconduct in the building department of the city. Subsequently the attorneys filed a written report containing the results of the investigation. That report contained allegations of misconduct on the part of Densmore in the performance of his duties as a building inspector. In a proceeding not involving the same parties this court held the report to be one of public record and hence subject to disclosure.[1] The city council gave the report to the city manager, Donald Crawford, and instructed him to take whatever action he deemed necessary as a result of the findings in the report. One of the actions taken by Crawford was to discharge Densmore. He did so by writing Densmore a letter which contained some of the same allegations that were contained in the report. Crawford then made the contents of the letter public.[2]
Densmore then sued Crawford and his employers for defamation and invasion of privacy based on Crawford's release of the letter of discharge. In addition to other defenses Crawford claimed that his actions were absolutely privileged. After various discovery proceedings the appellees moved for summary judgment which was granted by the trial court. The parties agree that there are no factual disputes.
Densmore claims that the letter written by Crawford showed that a copy was to go to Densmore's personnel file. As a result, he maintains that the letter became a confidential part of his employment record and that its release, absent his consent, constituted an invasion of his right to privacy. Densmore asserts that his right to privacy should prevail over the claim of privilege. In addition to claiming executive privilege, the appellees assert that Densmore enjoyed no right of privacy with respect to disclosure of the reasons for his discharge and that since this court has already held that the information contained in the letter, which was the same as that contained in the attorney's report, was a public record, the letter itself could not be actionable.
*947 First, since Densmore concedes that the same information contained in the letter was made public by our previous decision in a case involving the report upon which the letter was based,[3] we fail to see how Crawford can be held legally liable for any public disclosure of what is now admittedly public information.
Secondly, while Densmore asserts that the primary issue is his right to a cause of action for breach of his constitutional right of privacy, we think the issue is more properly brought into focus by examining the Supreme Court's rulings on executive privilege. In the landmark decision of McNayr v. Kelly, 184 So.2d 428 (Fla. 1966) our Supreme Court extended the doctrine of absolute immunity from liability to executive officials with respect to defamatory publications made in connection with the performance of their official duties. The Court recognized that extension of the doctrine would infringe upon some constitutional rights:
Admittedly the question is a difficult one not only for the reasons heretofore stated in this opinion but because of the impact of constitutional provisions such as the provision of our Declaration of Rights which provides that the courts of this State shall be open so that every person for any injury done him in his lands, goods, person or reputation shall have remedy by due course of law and that right and justice should be administered without sale, denial or delay. In Barr v. Matteo [, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434,] the majority opinion adopted the language of Judge Learned Hand in Gregoire v. Biddle, 2 Cir., 177 F.2d 579-581, as the rationale upon which the basic decision was reached. This excellent dissertation so effectively presents and disposes of the arguments on both sides that it is again quoted in the footnote of this opinion. (Id. at 431) (Footnote omitted)
The statements of Judge Hand referred to recognize that a trade-off is involved in accepting the doctrine since some public officials are going to abuse the privilege and innocent persons are going to be harmed without recourse:
As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. (Id. at 431 n. 12)
Under the circumstances of this case we do not believe Densmore had an absolute right of privacy as to the reasons for his dismissal. Therefore, we do not feel it is necessary to determine whether or not Densmore's right of privacy extends to the contents of his personnel file. In McNayr the Supreme Court recognized that the county manager of Dade County possessed an absolute privilege with reference to public statements he made in discharging the county public safety director. That is precisely the situation we have here. If in fact the city manager enjoys an absolute privilege in disclosing the reasons for his discharge of Densmore, surely such privilege cannot be extinguished by the fact that a copy of the letter setting out those reasons is filed in Densmore's personnel file. The fact that publication of the reasons for discharge may in fact defame the public employee was a sacrifice knowingly made when the doctrine of absolute immunity was adopted in Florida. McNayr, supra.
On the other hand, in order to invoke the doctrine the official must have been acting within the scope of his powers. McNayr, supra. For instance, if the city personnel rules prohibited the release of information concerning the discharge of an employee, the city manager would probably be acting beyond the scope of his duties if he disclosed such information. Likewise, if there was no official purpose, such as in explanation of the discharge of an employee, upon which to base the disclosure of personal information about an employee, then the official might not be able to invoke the *948 privilege. But we have neither situation here. Here, as in McNayr, the city manager was entitled to disclose his reasons for discharging Densmore and to assert his executive privilege as to that disclosure.
In summary, the information claimed as defamatory and private has admittedly been held to be public in a separate proceeding; the city manager enjoyed an absolute privilege in disclosing the reasons for his discharge of Densmore; and the filing of a copy of a letter containing those reasons in the employee's personnel file did not remove the privilege. We find no merit in the other points raised on appeal.
Accordingly, the judgment of the trial court is affirmed.
MOORE, J., and PACK, WALLACE, Associate Judge, concur.
NOTES
[1] State ex rel. Veale v. City of Boca Raton, 353 So.2d 1194 (Fla. 4th DCA 1977).
[2] Crawford made the contents public prior to this court's decision in Veale.
[3] Veale, supra note 1.