390 So.2d 449 (1980)
Paul C. MUELLER, Appellant,
v.
THE FLORIDA BAR, an Association, and Paul Gross, Appellees.
No. 79-2427.
District Court of Appeal of Florida, Fourth District.
November 19, 1980.
*450 Thomas E. Hunt of Thomas E. Hunt, P.A., Fort Lauderdale, for appellant.
Todd A. Cowart of Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, for appellees.
HERSEY, Judge.
Paul C. Mueller, a member of The Florida Bar, was charged by complaint of The Florida Bar with eleven counts of misconduct. Finding him guilty of some of the charges the supreme court disbarred him effective October 3, 1977. The Florida Bar v. Mueller, 351 So.2d 960 (Fla. 1977).
On the day following issuance of this opinion the following article appeared in the Fort Lauderdale News:
 FT. LAUDERDALE
 Court Disbars
 Local Attorney
A local attorney was disbarred by the Florida Supreme Court yesterday for a variety of alleged improper activities, including filing false allegations against a former partner and his secretaries, false accounting to a client, improper plea bargaining and dual representation. In a 4-1 decision, the high court revoked the right of Paul C. Mueller, who has an office at 524 S. Andrews Ave., to practice law in Florida. A referee recommended a 30-month suspension for Mueller, an unsuccessful 1970 candidate for Fort Lauderdale small claims court, but the recommendation was overruled.
Subsequently Mueller filed an action which included claims for defamation and for malicious prosecution, naming as defendants The Florida Bar and Paul Gross. Mr. Gross was an agent of The Florida Bar in the capacity of assistant staff counsel. His duties included referring complaints to grievance committees and prosecuting grievance matters.
The gravamen of Mueller's complaint is that two of the offenses mentioned in the newspaper article, which also appeared in other publications and was aired on radio *451 and television, are totally untrue, were published maliciously and without authority, and that the publication therefore constitutes libel per se; that groundless client complaints were made the basis for grievance proceedings; and that other complaints were solicited by the defendants and made the basis for grievance proceedings.
The first count of the amended complaint, dealing with publication, seeks damages for defamation and the second and third counts allege malicious prosecution.
The trial court dismissed the complaint with prejudice, finding that both defendants were insulated from liability by virtue of an absolute privilege. Mueller appeals on the grounds that Gross acted beyond the scope of his authority in releasing information to the news media, thus subjecting the defendants to liability for defamation, and that the complaint states a cause of action for malicious prosecution.
The question is whether The Florida Bar and its duly authorized agents enjoy immunity from liability for defamation or malicious prosecution by virtue of an absolute privilege. The answer is a qualified yes. However, we limit our consideration and therefore the holding in this case to the liability of The Florida Bar and its agents for defamation and malicious prosecution under the circumstances alleged in the amended complaint.
In the area of defamation, the rule in Florida is that words spoken or written by public servants in judicial, legislative and executive activities are protected by absolute privilege from liability for defamation. McNayr v. Kelly, 184 So.2d 428 (Fla. 1966), adopting the rule and rationale of Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). As the latter case points out, the privilege extends only to words or acts within the scope of the authority of the public servant. Ward v. Allen, 11 So.2d 193 (Fla. 1942); Saxon v. Knowles, 185 So.2d 194 (Fla. 4th DCA 1966); Knight v. Starr, 275 So.2d 37 (Fla. 4th DCA 1973). We have previously distinguished absolute privilege from the concept of sovereign immunity. Cobbs Auto Sales, Inc. v. Melvin Coleman, 353 So.2d 922 (Fla. 4th DCA 1978).
Article V, Section 15, Florida Constitution (rev. 1972) provides:
Attorneys; admission and discipline.-The supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted.
Rule 11.03 of Article XI of the Integration Rule of The Florida Bar designates The Florida Bar and its staff counsel as agencies of the supreme court for the purpose of administering its jurisdiction. The Florida Bar is thus an arm and part of the judiciary, one of the three co-equal branches of state government, The Florida Bar v. Lewis, 358 So.2d 897 (Fla. 1st DCA 1978). It follows that The Florida Bar and its agents acting within the scope of their office are protected from liability for publication of defamatory matter by an absolute privilege.
The remaining question is whether Paul Gross was acting within the scope of his office or authority when he issued the media release which is the subject of appellant's complaint. For purposes of testing the sufficiency of the complaint we accept, as the trial court was bound to do, the truth of the well-pleaded allegations, including Gross's authorship of the release. Temples v. Florida Industrial Construction Co., 310 So.2d 326 (Fla.2d DCA 1975).
Precedent indicates an inclination to give a broad definition to the term "scope of office" and its synonyms. Densmore v. City of Boca Raton, 368 So.2d 945 (Fla. 4th DCA 1979); Kribs v. City of Boynton Beach, 372 So.2d 195 (Fla. 4th DCA 1979). We are persuaded that public policy dictates adherence to that philosophy.
Particularly apt to the situation which confronts us on this appeal is the following language from Johnson v. Carhart, 353 So.2d 874, 876 (Fla. 3rd DCA 1977):
By the foregoing, it is shown that the absolute immunity of such an official operates to relieve him from the necessity *452 of being subjected to trial of an action based on his privileged conduct, notwithstanding that a complaint for libel which is filed against him may allege, as a conclusion, that he is without such immunity or was acting beyond the scope of his duty or office, where, as in this case, the complaint and its exhibits disclose the action of the official was taken in the interest of the public good and thereby within the scope of his duties and responsibilities, notwithstanding the allegations in the complaint to the contrary.
In that case, the prosecutor wrote a letter to the Chief of Police suggesting that a former policeman seeking reemployment with the police department had lied at his criminal trial. The test relied on by the court, as suggested by the quoted language, is whether the action taken by the prosecutor in writing the letter was "in the interest of the public good." Dismissal of the libel action filed by the former policeman was affirmed.
It was clearly within the scope of the authority of staff counsel to advise not only appellant's clients but also his prospective clients of appellant's disbarment. The latter category consists of the public at large. Thus, dissemination of the press release was in the interest of the public good and therefore absolutely privileged.
The absolute privilege attaches to staff counsel's entire action and effectively bars further inquiry into either the accuracy of the information released or the motives for releasing it. The rationale behind this rule was explained by Judge Learned Hand in Gregoire v. Biddle, 177 F.2d 579 (2d Cir.1949):
In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.
We have previously indicated that our inquiry will here be limited to The Florida Bar and its agents and will not concern itself with other categories of public servants. From this perspective we now consider the counts sounding in malicious prosecution. We agree with appellant's contention that malicious prosecution will lie against a public officer in a proper case. Ward v. Allen, 11 So.2d 193 (Fla. 1942).
The distinction drawn by appellant between Counts II and III appears to be that the grievance matters alleged in Count III were initiated as a result of solicitation by the defendants. We have here what is sometimes referred to as a distinction without a difference. We are not aware of any rule or policy prohibiting The Florida Bar from actively seeking (soliciting, if you will) complaints against particular members of the bar or members of the bar in general. The current vogue is to publicize and emphasize the avenues open to aggrieved members of society victimized by unscrupulous counsel. Both the quality of the bar and its public image have been enhanced by this trend. The allegation that certain complaints were solicited is therefore surplusage.
The initiation of grievance matters is a prosecutorial function of The Florida Bar. Appellant suggests that it is an administrative function and therefore not privileged, relying on Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). We do not find in Imbler the distinction postulated by appellant. The Imbler court ruled that a state prosecuting attorney was absolutely immune from liability for allegedly depriving another of constitutional rights in violation of the Civil Rights Act, 42 U.S.C. § 1983. The opinion indicated that immunity would not be denied even if the prosecutor had knowingly used perjured testimony, intentionally withheld exculpatory evidence or failed to disclose facts casting doubt on the state's evidence. Mention was made of the dual aspects of the prosecutor, one administrative and the other prosecutorial, but no difference in application of the doctrine of immunity or absolute privilege is supported by the Imbler opinion.
The rule of prosecutorial immunity insulates The Florida Bar and its agents from liability for malicious prosecution in *453 an action brought against them by a member of the bar against whom a grievance has been filed, regardless of the motive for that filing and without regard to whether or not there was probable cause for such filing. In Stone v. Rosen, 348 So.2d 387 (Fla. 3rd DCA 1977) our sister court held that there is an absolute privilege on the part of an individual to file a complaint against a member of the bar. The court concluded that such an individual is afforded an absolute privilege and therefore could not be liable for malicious prosecution in making such a complaint. The reasons for this holding, in which we concur, apply as well to agents of The Florida Bar carrying out their official functions as they do to the disgruntled client. The Stone court explained:
Members of the legal profession are accorded rights and privileges not enjoyed by the public at large; the acceptance of these carries with it certain responsibilities and obligations to the general public. For the sake of maintaining the high standards of the profession and disciplining those who violate the Cannons of Legal Ethics, one who elects to enjoy the status and benefits as a member of the legal profession must give up certain rights or causes of action which, in this instance, is the right to file an action against a complainant who lodges an unsuccessful complaint with the Grievance Committee of The Florida Bar. Id. 389.
Whether phrased in terms of immunity or in terms of absolute privilege makes little significant difference. We find that in either event The Florida Bar and its agents acting within the scope of their office are not subject to liability for defamation or malicious prosecution in situations analogous to those alleged in the amended complaint filed in this case.
We affirm the order of the trial court dismissing the amended complaint with prejudice.
AFFIRMED.
DOWNEY and ANSTEAD, JJ., concur.