825 So.2d 409 (2002)
Ken JENNE, Sheriff of Broward County, Appellant,
v.
Christine MARANTO, Appellee.
No. 4D01-2147.
District Court of Appeal of Florida, Fourth District.
May 8, 2002.
Opinion on Denial of Rehearing August 21, 2002.
*410 Harry O. Boreth and Lloyd S. Glasser of Glasser & Boreth, P.A., Plantation, for appellant.
*411 William R. Amlong of Amlong & Amlong, P.A., Fort Lauderdale, for appellee.
FARMER, J.
An employee of the Sheriff of Broward County has sued him in the circuit court below, claiming that he violated federal law by paying her less than he pays male employees for the same work. The Sheriff moved to dismiss on the basis that he is immune from this suit under the Eleventh Amendment to the United States Constitution. The trial judge decided that the immunity had been waived and denied the motion. The Sheriff timely appeals under rule 9.130(a)(3)(C)(vii).
We first address an issue relating to appellate jurisdiction. Rule 9.130(a)(3)(C)(vii) allows nonfinal review of orders determining that "as a matter of law, a party is not entitled to absolute or qualified immunity in a civil rights claim arising under federal law." We are thus required to assess whether plaintiffs claim under the Equal Pay Act[1] (EPA) is a civil rights claim and whether the Sheriff is claiming absolute or qualified immunity so as to place his attempted nonfinal appeal within rule 9.130(a)(3)(C)(vii).
The EPA was added by amendment to the Fair Labor Standards Act (FLSA).[2] The EPA was placed within an FLSA statute setting minimum wage rates for employees in commerce. Its essential and only function is to prohibit paying wages to employees of one sex at a rate less than that paid to employees of the other sex for the same work. The FLSA, and thus also the EPA, is codified under Title 29, United States Code, which comprises labor legislation enacted as an exercise of congressional powers under Article I, section 8, of the United States Constitution.
One year after the adoption of the EPA, Congress enacted Title VII of the Civil Rights Act of 1964 (Title VII).[3] Title VII bans invidious discrimination on the basis of sex in any of the terms and conditions of employment. The EPA bans sex discrimination only in matters of pay and compensation in employment. In contrast to EPA, Title VII was adoptedat least in partpursuant to Congress's powers under section 5 of the Fourteenth Amendment, which authorizes legislation applicable even against the States to enforce the constitutional guarantee of the equal protection of the laws contained in the Fourteenth Amendment. Title VII is codified within Title 42, United States Code, along with several other civil rights acts.
As originally adopted the EPA did not apply to the States. In 1974, however, Congress amended the statute to do so.[4] The 1974 legislation does not indicate what constitutional powers Congress relied on in extending the EPA to cover the States, but under recent Supreme Court decisions that omission does not preclude judges from inferring a Congressional purpose to rely on section 5 of the Fourteenth Amendment in order to validate such legislation. As the Court explained in Kimel v. Florida Board of Regents, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000):
"`Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute.' We agree with *412 petitioners that the ADEA satisfies that test.... Section 216(b), in turn, clearly provides for suits by individuals against States. That provision authorizes employees to maintain actions for backpay `against any employer (including a public agency) in any Federal or State court of competent jurisdiction....' Any doubt concerning the identity of the `public agency' defendant ... is dispelled by looking to §§ 203(x), which defines the term to include `the government of a State or political subdivision thereof,' and `any agency of ... a State, or a political subdivision of a State.' Read as a whole, the plain language of these provisions clearly demonstrates Congress' intent to subject the States to suit for money damages at the hands of individual employees." [c.o.]
528 U.S. at 73-74, 120 S.Ct. 631.
As the United States Court of Appeals for the Eleventh Circuit has explained about the 1974 amendment to the EPA:
"The original enactment of the Equal Pay Act in 1963 applied only to private employers and stated that Congress was legislating pursuant to its powers under the Interstate Commerce Clause. In 1974, when Congress extended the Equal Pay Act to the States, Congress did not state the basis for its power to abrogate the States' sovereign immunity. This lack of language by Congress stating the basis of its power to legislate is not fatal because the Supreme Court has acknowledged the long-recognized rule that `[t]he constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise.'"
Hundertmark v. State of Fla., Dept. of Transp., 205 F.3d 1272, 1274-75 (11th Cir. 2000).
Applying that analysis to the 1974 amendment to the EPA, it appears to us as it did to the Eleventh Circuit that while EPA was originally enacted under the interstate commerce powers given to Congress in Article I, section 8, the extension of EPA to cover State employers was based on the power given to Congress in section 5 of the Fourteenth Amendment. Unlike the Eleventh Circuit, however, we do not think that an amendment to the EPA extending it to cover governmental employers necessarily makes the EPA civil rights legislation.
We emphasize that the EPA was itself an amendment to the FLSA statute setting minimum wage rates, a statute no one would characterize as civil rights legislation. The EPA is still today a part of that same FLSA statute. The 1974 amendment extending the EPA to cover the States was in fact an amendment that directly applied to FLSA, not to EPA. In Alden v. Maine, the Court considered a claim of "constitutional design" immunity and the Eleventh Amendment in a suit brought under the FLSA against the State of Maine in a Maine court. Alden v. Maine, 527 U.S. 706, 712, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). The Court began its analysis by implicitly holding that FLSA must be considered under Congress's Article I powers. 527 U.S. at 712, 119 S.Ct. 2240. The Court went on to hold that Congress had no Article I power to make the States subject to suits in their own courts:
"We hold that the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts. We decide as well that the State of Maine has not consented to suits for overtime pay and liquidated damages under the FLSA."
527 U.S. at 711, 119 S.Ct. 2240.
Our jurisdiction has been invoked under rule 9.130. As the supreme court *413 explained about nonfinal review under this rule:
"The thrust of rule 9.130 is to restrict the number of appealable nonfinal orders. The theory underlying the more restrictive rule is that appellate review of nonfinal judgments serves to waste court resources and needlessly delays final judgment."
Travelers Ins. Co. v. Bruns, 443 So.2d 959, 961 (Fla.1984). The enumerated categories of permissible nonfinal review stated in rule 9.130 must be limited to their plain meaning. 443 So.2d at 960 ("Petitioner's argument is contrary to the plain meaning of the rule...."). The rule does not authorize judges to enlarge its provisions to permit review of nonfinal orders not specified within its provisions. See BE & K Inc. v. Seminole Kraft Corp., 583 So.2d 361, 364 (Fla. 1st DCA 1991) ("Piecemeal review of non-final orders prior to final disposition of all issues must be strictly limited as much as possible to conserve the sparse judicial resources available at the appellate level.").
In this case, the Sheriff claims the pure immunity of the sovereign States protected by the Eleventh Amendment, rather than the absolute or qualified immunity of individual officials confronted by the Florida Supreme Court in Tucker v. Resha, 648 So.2d 1187 (Fla.1994). In Tucker, the court concluded that nonfinal review should be allowed for denials of absolute or qualified immunity in civil rights cases and instructed the Appellate Rules Committee to draft an amendment to rule 9.130 providing for such review. The claim in Tucker did not involve an action against the State of Florida, or one of its officials who partook of the State's fundamental "constitutional design" immunity and was thereforelike the State itselfdirectly protected against the suit by the Eleventh Amendment.[5]
Instead the immunity at issue in Tucker was an individual immunity of governmental officials, often officials of cities and local governments, who are sued for acts committed while purporting to act within their lawful discretion but who are not protected by the Eleventh Amendment.[6] This qualified or absolute immunity is an affirmative defense which must be pleaded and proved by the official claiming it.[7] In contrast, the sovereign immunity of the States protected by the Eleventh Amendment has the character of a limitation on judicial jurisdiction and cannot be waived by mere inaction on the part of the State; it takes a positive act of waiver by the State to lose it.[8]
*414 Applying the plain meaning of rule 9.130(a)(3)(C)(vii), we are forced to construe the EPA to be something other than civil rights legislation for purposes of our jurisdiction under the rule. The rule specifically limits its sweep to claims only of "absolute or qualified immunity in a civil rights claim arising under federal law...." The plain meaning of these words is obviously to cover only the kind of immunity absolute or qualifiedclaimed by individual officials who are perforce not entitled to the "constitutional design" immunity protected by the Eleventh Amendment. Because we have appellate jurisdiction to review only those nonfinal orders specified in rule 9.130 and are not authorized to enlarge its terms to extend additional meanings, cf. Holly v. Auld, 450 So.2d 217 (Fla.1984) (courts lack power to construe unambiguous statute to extend, modify or limit its express terms or its reasonable and obvious implications; not court's duty or prerogative to modify or shade clearly expressed legislative intent in order to uphold policy favored by the court), we must therefore lack jurisdiction thereunder to review this nonfinal appeal from the denial of the Sheriff's immunity claim.
We recognize that in Tucker, 648 So.2d at 1187, the supreme court required the Appellate Rules Committee to draft an amendment to rule 9.130 providing for nonfinal review. But we are not the supreme court and lack the power to make jurisdictional changes in the Rules of Appellate Procedure. We would point out, however, that the text of the rule drafted in response to Tucker's direction is improvidently limited to absolute and qualified immunity of individual officials in civil rights cases. It is true that the claim in Tucker was based on an individual claim of absolute immunity in a civil rights case. Nevertheless, as we see in the present case, the State's "constitutional design" immunity protected by the Eleventh Amendment is applicable in cases that do not involve civil rights claims. Although the immunity of public officials at issue in civil rights cases may not be directly founded on the Eleventh Amendment, there is no functional difference between the two kinds of immunity for purposes of interlocutory review of a denial of it. Both involve an immunity from suit, not from liability. Moreover the individual immunity in civil rights cases stems from both statutory policies and the Constitution's separation of powers, while the Eleventh Amendment immunity claimed by the Sheriff in this case is an integral part of the original constitutional design. See Alden, 527 U.S. at 733-34, 119 S.Ct. 2240. Hence if the affirmative defense of immunity of individual public officials compels nonfinal review when it is denied, surely the pure constitutional immunity of the States claimed here would, even more so, require interlocutory review. Thus it would seem that the rule might have been better framed to provide for nonfinal review whenever immunity from suit under federal law is denied and federal law would itself provide for such review. The Rules Committee may want to reconsider its choice of language.
Rule 9.130(a)(3)(C)(vii) is not the only basis on which we might have been asked to review the order in question. We have jurisdiction under rule 9.030(b)(2)(A) to grant writs of certiorari. In cases involving orders entered in civil cases before *415 final judgment, we have a very limited authority to grant extraordinary review when the order in question causes irreparable injury incapable of being remedied by a final appeal, and where the order constitutes a departure from the essential requirements of law. Martin-Johnson Inc. v. Savage, 509 So.2d 1097, 1099 (Fla. 1987) ("order must depart from the essential requirements of law and thus cause material injury to the petitioner throughout the remainder of the proceedings below, effectively leaving no adequate remedy on appeal"); Bared & Co., Inc. v. McGuire, 670 So.2d 153 (Fla. 4th DCA 1996); see also Canadian Home Ins. Co. v. Norris, 471 So.2d 217 (Fla. 4th DCA 1985) (even though trial court's order denying defendant's motion to dismiss was not subject to nonfinal appeal, court would review order by common-law certiorari where adequate relief could not be obtained on plenary appeal and where trial court's order constituted departure from the law's essential requirements).
Applying that standard, we have little difficulty in concluding that an erroneous denial of Eleventh Amendment immunity would cause irremediable injury incapable of being corrected on a final appeal. Cf. Mitchell v. Forsyth, 472 U.S. 511, 526-7, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ("The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. Accordingly, the reasoning that underlies the immediate appealability of an order denying ... qualified immunity should be... [applicable];... the district court's decision is effectively unreviewable on appeal from a final judgment."); see also Tucker v. Resha, 610 So.2d 460, 464 (Fla. 1st DCA 1992), quashed on other grounds 648 So.2d 1187 (Fla.1994) ("Because of the nature and purpose of the claim of qualified immunity, an appeal after final judgment would hardly constitute a full and adequate remedy, for once the protection of immunity is lost and trial ensues, there is no means of reimmunizing the party."). We therefore proceed to review the order under our certiorari jurisdiction.
The Sheriff's immunity claim is, as we have said, based on the Eleventh Amendment. Even if the State is not named as a formal party, the action may still be barred by the Eleventh Amendment. See Alden, 527 U.S. at 756, 119 S.Ct. 2240 ("Some suits against state officers are barred by the rule that sovereign immunity is not limited to suits which name the State as a party if the suits are, in fact, against the State."); Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) ("The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations." [c.o.]); Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ("It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment."); Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.").
The question is whether the Sheriff is a "stand-in" for the State of Floridathat is, whether the State itself will bear the effects of the judgment in this case. As the Court explained in Mt. Healthy:

*416 "The issue here thus turns on whether the [defendant claiming immunity] is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend. The answer depends, at least in part, upon the nature of the entity created by state law."
429 U.S. at 280, 97 S.Ct. 568. The Court went on to explain as regards the immunity of the agency in that case:
"Under Ohio law the `State' does not include `political subdivisions,' and `political subdivisions' do include local school districts. Petitioner is but one of many local school boards within the State of Ohio. It is subject to some guidance from the State Board of Education, and receives a significant amount of money from the State. But local school boards have extensive powers to issue bonds, and to levy taxes within certain restrictions of state law. On balance, the record before us indicates that a local school board such as petitioner is more like a county or city than it is like an arm of the State. We therefore hold that it was not entitled to assert any Eleventh Amendment immunity from suit in the federal courts."
429 U.S. at 280-81, 97 S.Ct. 568.
We conclude that much the same thinking is applicable here. Florida is divided into political subdivisions, the several Counties, and the Sheriff is a constitutional officer in each County. Art. VIII, § 1(a), (d), Fla. Const. The Counties are political subdivisions but they are not the State itself. The Florida Constitution names the Sheriff as a county official, not as an official of the State. Art. VIII, § 1(d), Fla. Const. Although the Sheriff performs many functionse.g., the Sheriff is responsible for serving process within the County[9]his budget is made up by the County from taxes levied only within the County.[10] Moreover, the Sheriff is authorized to purchase liability insurance for, among other things, "claims arising out of the performance of the duties of the Sheriff...."[11] Thus any money judgment in this case will be paid from the local county budget or by insurance purchased therefrom by the Sheriff.
On balance therefore the Sheriff is an official of local government, rather than an arm of the State. We thus hold for purposes of this case that Sheriff Jenne is not an arm of the State and is not entitled to claim the constitutional immunity protected by the Eleventh Amendment.
Because the only immunity claimed by Sheriff Jenne is the "constitutional design" immunity protected by the Eleventh Amendment, and we have concluded that he is not an arm of the State and therefore not entitled to claim such immunity, we hold that the trial court reached the correct result in refusing to enforce his immunity claim.[12] We therefore deny the petition for certiorari.
WARNER, J., and ROBY, WILLIAM L., Associate Judge, concur.

*417 ON MOTION FOR REHEARING

FARMER, J.
In our original opinion we held thatfor the purposes of the claim in suiton balance Sheriff Jenne is an official of local government rather than an arm of the State. In support of his motion for rehearing Sheriff Jenne newly calls our attention to McMillian v. Monroe County, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), and argues that our holding conflicts with that decision. Denying rehearing, we write briefly to explain why we do not find any conflict.
McMillian involved a civil damages claim under the Civil Rights Act of 1873[1] by a convicted defendant who spent six years on death row but was later released after his conviction was reversed. He sued an Alabama County and alleged that two county officials, a sheriff and an investigator for the district attorney, had intimidated witnesses into making false statements against him and had withheld exculpatory evidence. The County argued that the conduct of the two officials did not represent the law enforcement policy of the County itself because the County had no authority to make law enforcement policy for the State of Alabama. Thus the County could not be liable for the section 1983 claim because it did not involve County policy. The trial court agreed and dismissed the claim, holding that the sheriffs unlawful acts did not represent the policy of the County itself. The Court of Appeals affirmed.
The Supreme Court held that when executing their law enforcement duties, Alabama sheriffs represent the State of Alabama, not their counties. Therefore the sheriff could not have been a County policy maker in connection with law enforcement. The Court explained that, in determining a local government's section 1983 liability, a court's task is to identify those who speak with final policy making authority for the local governmental actor concerning the action alleged to have caused the violation at issue. In deciding this dispute, the question is not whether Alabama sheriffs act as county or state officials in all of their official actions, but whom they represent in a particular area or on a particular issue.
The Court defers considerably to the expertise of the Court of Appeals in interpreting Alabama law. Thus the Court concluded that the State's constitutional provisions concerning sheriffs, the historical development of those provisions, and the interpretation given them by the State Supreme Court strongly support the County's contention that sheriffs represent the State when acting in their law enforcement capacity. The Court concluded that the sheriff acted under state's law enforcement authority and not that of the County; therefore the County could not be held liable under section 1983. The Court waved off any concern from the resulting lack of uniformity in permitting sheriffs to be classified as state officials in some States and county officials in others.
The foregoing delineation of McMillian shows, of course, that the decision is not directed to the subject of Eleventh Amendment immunity, but rather with the nature of section 1983 liability. For our purposes the critical holding was that Alabama sheriffs are not county policymakers for purposes of section 1983 liability in a case involving unconstitutional conduct in *418 criminal law enforcement. Moreover, McMillian makes clear that the role of governmental officials must be assessed in light of the particular function at issue in the dispute. The function in that case involved policymaking in the area of law enforcement. The Alabama constitution gave the sheriff state policymaking authority in law enforcement.
As our initial opinion shows, Sheriff Jenne's case does not involve section 1983 liability. The claim is that the sheriff pays female employees less than he pays male employees for the same work. Nothing in the Florida constitution or statutes gives the sheriff state policymaking authority in the area of such pay differentials for employees. When hiring employees and carrying out pay policies for the sheriff's staff, the sheriff acts as any other constitutional official of a county.
REHEARING DENIED.
WARNER, J., and ROBY, WILLIAM L., Associate Judge, concur.
NOTES
[1] 29 U.S.C. § 206(d).
[2] See Equal Pay Act of 1963, Pub.L. 88-38.
[3] 42 U.S.C. § 2000 et seq.
[4] See Pub.L. 93-259, § (6)(C) ("In the case of an individual employed by a public agency, such term means...any individual employed by a state, political subdivision of a state, or an interstate governmental agency...").
[5] See Alden, 527 U.S. at 748-49, 119 S.Ct. 2240 ("Although the sovereign immunity of the States derives at least in part from the common-law tradition, the structure and history of the Constitution make clear that the immunity exists today by constitutional design.... The principle of sovereign immunity preserved by constitutional design `thus accords the States the respect owed them as members of the federation.'").
[6] See Harlow v. Fitzgerald, 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ("At the same time, however, it cannot be disputed seriously that claims frequently run against the innocent as well as the guiltyat a cost not only to the defendant officials, but to society as a whole. These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. Finally, there is the danger that fear of being sued will `dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.'").
[7] Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).
[8] See Edelman v. Jordan, 415 U.S. 651, 677-78, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ("the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court...."); Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 466-67, 65 S.Ct. 347, 89 L.Ed. 389 (1945) ("The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue arising under this Amendment in this case even though urged for the first time in this Court.").
[9] See § 30.15(1)(a), Fla. Stat. (2000) ("Sheriffs, in their respective counties, in person or by deputy, shall: (a) Execute all process of the Supreme Court, circuit courts, county courts, and boards of county commissioners of this state, to be executed in their counties.").
[10] See § 30.49, Fla. Stat. (2000).
[11] See § 30.555, Fla. Stat. (2000).
[12] See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla.1979) (even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if evidence or an alternative theory supports it). We agree that if waiver were an issue in this case section 768.28 would not constitute a waiver of immunity. In Hill v. Dep't of Corrections, State of Florida, 513 So.2d 129 (Fla.1987), the court held that the statute waives immunity only for tort actions. The action here is not a tort action but instead seeks redress for a statutory violation.
[1] 42 U.S.C. § 1983.