987 So.2d 166 (2008)
Robert CROWDER, in his official capacity as Sheriff of Martin, County, Petitioner,
v.
Robert BARBATI, Respondent.
No. 4D08-1495.
District Court of Appeal of Florida, Fourth District.
July 16, 2008.
*167 Bruce W. Jolly and Jason L. Scarberry of Purdy, Jolly, Giuffreda & Barranco, P.A., Fort Lauderdale, for petitioner.
Henry L. Kaye of Kaye Law Firm, PLLC, West Palm Beach, for respondent.
PER CURIAM.
The Sheriff of Martin County, Robert Crowder, seeks certiorari review of the lower court's denial of a motion to dismiss on the ground that the sheriff was immune from this lawsuit. We grant the petition and quash the lower court's order.
Robert Barbati sued the sheriff for defamation for a press release issued on the sheriff's internet website that labeled Barbati and others as "deadbeat parents" for failing to pay court-ordered child support. The press release described the sheriff's annual "Grinch Roundup" which involved the sheriff's efforts to bring parents up-to-date on child support obligations; the press release also indicated a grace period for parents to pay their back child support before deputies began to execute the warrants. The release referenced an outstanding writ of bodily attachment indicating that Barbati owed $1,107,891 in child support.
The sheriff moved to dismiss the complaint, alleging immunity from suit. The circuit court denied the motion, leading to this timely petition for writ of certiorari.
In Jenne v. Maranto, 825 So.2d 409 (Fla. 4th DCA 2002), this court recognized that certiorari relief was an appropriate method of challenging the denial of a motion to dismiss based upon principles of immunity from suit. Id. at 415 ("[W]e have little difficulty in concluding that an erroneous denial of Eleventh Amendment immunity would cause irremediable injury incapable of being corrected on a final appeal."). We recognized that immunity protected a government official from having to defend the suit in the first place. Thus, any remedy that enforced immunity upon final appeal, after the case had been fully defended, would be meaningless. Id. citing Mitchell v. Forsyth, 472 U.S. 511, 526-27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ("The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. Accordingly, the reasoning that underlies the immediate appealability of an order denying ... qualified immunity should be ... [applicable];... the district court's decision is effectively unreviewable on appeal from a final judgment.").
As to the merits, in Hauser v. Urchisin, 231 So.2d 6, 8 (Fla.1970), the supreme court explained the basic principles of governmental privilege: "The public interest requires that statements made by officials of all branches of government in connection with their official duties be absolutely privileged." The court recognized that democracy needs "free and open explanations" of governmental actions and the right to this absolute privilege is a function of that necessity. Id. This absolute privilege extends to a sheriff for comments made in the course of the sheriff's duties. See Knight v. Starr, 275 So.2d 37 (Fla. 4th DCA 1973) (affirming the dismissal of a defamation suit against a sheriff because "from the face of the pleading... the alleged statements made by the defendant-sheriff were absolutely privileged.").
*168 Later, Mueller v. The Florida Bar, 390 So.2d 449, 451 (Fla. 4th DCA 1980), observed that "[i]n the area of defamation, the rule in Florida is that words spoken or written by public servants in judicial, legislative and executive activities are protected by absolute privilege from liability for defamation." (citing McNayr v. Kelly, 184 So.2d 428 (Fla.1966), adopting Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959)). "As the latter case points out, the privilege extends only to words or acts within the scope of the authority of the public servant." Id. (citing Ward v. Allen, 152 Fla. 82, 11 So.2d 193 (1942); Saxon v. Knowles, 185 So.2d 194 (Fla. 4th DCA 1966); Knight, 275 So.2d at 37). Where the official acts "within the scope of their office" that official enjoys "an absolute privilege." Mueller, 390 So.2d at 451. Mueller held that immunity applied to a press release issued by the Florida Bar about a disbarred attorney; we concluded that the Bar counsel had acted within the scope of his authority to advise the public of the attorney's disbarment, so that "dissemination of the press release was in the interest of the public good and therefore absolutely privileged." Id. at 452.
In the instant case, the act of issuing a press release concerning the official duties of the sheriff was "within the scope" of the office of the sheriff. The purpose of the release was to induce delinquent parents to pay their child support, a proper governmental function. "Precedent indicates an inclination to give a broad definition to the term `scope of office' and its synonyms." Id. at 451 (citing Densmore v. City of Boca Raton, 368 So.2d 945 (Fla. 4th DCA 1979); Kribs v. City of Boynton Beach, 372 So.2d 195 (Fla. 4th DCA 1979)). "We are persuaded that public policy dictates adherence to that philosophy." Mueller, 390 So.2d at 451.
The lower court order departed from the essential requirements of law by failing to give a broad enough interpretation of "scope of duty." The acts of the sheriff, in this case, are within the scope of the sheriff's authority so that we quash the order denying the motion to dismiss and remand for further proceedings consistent with this opinion.
Petition for writ of certiorari is granted; case remanded for further proceedings.
SHAHOOD, C.J., GROSS and MAY, JJ., concur.